1   Hovanes Margarian, SBN 246359
    hovanes@margarianlaw.com
2   Armen Margarian, SBN 313775
    armen@margarianlaw.com
3   Shushanik Margarian, SBN 318617
    shushanik@margarianlaw.com
4   THE MARGARIAN LAW FIRM
    801 North Brand Boulevard, Suite 210
5   Glendale, California 91203
    Telephone Number:    (818) 553-1000
6   Facsimile Number:    (818) 553-1005

7   Attorneys for Plaintiff,
8   BRIGHTK CONSULTING INC.

9                 **UNITED STATES DISTRICT COURT**

10           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11   BRIGHTK CONSULTING INC., as a         Case No.:
     California Corporation, on behalf of itself,   (Class Action)
12   all others similarly situated, and the general
     public,
13                                          **CLASS ACTION COMPLAINT FOR**
                                            **DAMAGES:**
14          Plaintiff,

15   vs.                                    1. **Fraud and Deceit**

16   BMW OF NORTH AMERICA, LLC, a           2. **Breach of Express Warranty**
     Delaware Limited Liability Company; and
17   DOES 1 through 10, inclusive,          3. **Breach of Implied Warranty**

18          Defendants.                     4. **Breach of Warranty (Song-Beverly**
                                               **Consumer Warranty Act), Civil Code §**
19                                             **1790, *et seq.*;**

20                                          5. **Violation of the California Consumer Legal**
                                               **Remedies Act ("CLRA"), Civil Code § 1750**
21                                             ***et seq.*;**

22                                          6. **Violation of the California Unfair**
                                               **Competition Law ("UCL"), Business and**
23                                             **Professions Code § 17200, *et seq.***

24                                          7. **Violation of the California False Advertising**
                                               **Laws ("FAL"), Business and Professions**
25                                             **Code § 17500, *et seq.***

26                                          8. **Strict Liability**

27                                          9. **Negligence**

28                                          **DEMAND FOR JURY TRIAL**

---

PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES

## COMPLAINT

NOW COMES Plaintiff, BRIGHTK CONSULTING INC., as a California Corporation, on behalf of itself, all others similarly situated, and the general public, by and through his attorneys, The Margarian Law Firm, with Plaintiff's Class Action Complaint for Damages against Defendant, BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive:

## INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiff on behalf of herself and a class of current and former BMW vehicle owners and lessees with defective cup holders utilized in numerous BMW vehicles sold in the United States, including but not limited to: the 2020 X7M501 (collectively, the "Class Vehicles").[1]

2.     This action arises from Defendant BMW OF NORTH AMERICA, LLC's ("Defendant" or "BMW") failure, despite its longstanding knowledge of a material defect, to properly disclose to Plaintiff and other consumers that the Class Vehicles' cup holders are defective and are not properly designed to hold cups filled with liquid ("Cup Holder Defect") – the very thing cup holders are intended to do – which impairs the safety and reliability of the Class Vehicles.

3.     The cup holders in the Class Vehicles are designed defectively because they are not designed, nor intended, to actually hold cups filled with liquid. When liquid spills into the cup holder, the wires for the SRS (airbag) control module, which sits directly underneath cup holder, get wet and are damaged, causing damage to the air bags. As a result, the air bags can inadvertently deploy.

4.     The defect exposes the driver and occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death.

5.     As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced the aforementioned defect while operating a Class Vehicle, thus placing themselves and those around them in immediate danger.

6.     The Cup Holder Defect creates a safety hazard due to the potential for liquid to seep past the cup holders and into the space in which the SRS (airbag) control module is stored. When liquid seeps

---

[1] Plaintiff reserves the right to amend or add to the vehicles models included in the definition of Class Vehicles after conducting discovery.

DocuSign Envelope ID: 58A10DC8-2077-40C9-AD58-70D1ABD75F5B

into this area, the wires are damaged, and the airbags are rendered defective.

7.     Defendant BMW has long been aware of the Cup Holder Defect and many owners and lessees of the Class Vehicles have communicated with Defendant or its agents to request that it remedy and/or properly address the Cup Holder Defect. Yet, notwithstanding its longstanding knowledge of this defect and such requests, Defendant BMW has routinely refused to properly repair the Class Vehicles.

8.     As a result of Defendant BMW's unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value.

9.     Had Plaintiff and other Class Members known about the Cup Holder Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them.

10.    As a result of the Cup Holder Defect and the monetary costs associated with attempting to repair such defect, Plaintiff and the Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendant BMW's conduct.

11.    Accordingly, Plaintiff brings this action to redress Defendant BMW's fraud and deceit, breaches of express and implied warranties pursuant to the Song-Beverly Consumer Warranty Act (Civil Code § 1790, *et seq.*) and the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*), violation of the California Consumer Legal Remedies Act ("CLRA") (Civil Code § 1750, *et seq.*), and violation of the California Unfair Competition Act ("UCL") (Business and Professions Code § 17200, *et seq.*) as well as False Advertisement (Business and Professions Code § 17500, *et seq.*) for Defendant BMW's pattern and practice of fraudulently, unfairly, deceptively, and unlawfully marketing, advertising, promoting, and leasing/selling various vehicles with defective cup holders that are not designed nor intended to hold cups filled with liquid.

12.    This action seeks redress for Plaintiff and the Class in the form of compensatory damages, punitive damages, and injunctive relief, which would include, *inter alia*, an order directing Defendant BMW to cease the challenged practices, including the manufacture, sale, and installation of the defective cup holders and initiate a program to provide refunds, repairs, and/or restitution to Plaintiff and the Class. ///

DocuSign Envelope ID: 58A10DC8-2077-40C9-AD58-79D4ABD75E5B

**PARTIES**

13.     Plaintiff BRIGHTK CONSULTING INC. is and was at all times relevant herein a California Corporation located and doing business at 18543 Yorba Linda Blvd., Yorba Linda, CA 92886. Plaintiff purchased, and during pertinent times was in possession of, one of the Class Vehicles, a 2020 X7M501 bearing the Vehicle Identification Number 5UXCX6C09L9B51525 ("Subject Vehicle"). The Subject Vehicle was manufactured, sold, or otherwise delivered to Plaintiff with the defective cup holders at issue in this case and as described herein.

14.     Plaintiff appears in this action on behalf of herself, on behalf of all others similarly situated, and pursuant to Business and Professions Code §§ 17200 *et seq.* and 17500 *et seq.*, on behalf of the general public in her capacity as a private attorney general.

15.     Defendant, BMW, is a Delaware Limited Liability Company licensed to do, and is doing business throughout the United States, with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, NJ 07677.

16.     BMW transacts business in Los Angeles County, California, and at all relevant times designed, manufactured, promoted, marketed, distributed, and/or leased/sold the Class Vehicles that are the subject of this Complaint, throughout the United States including California. Defendant BMW has significant contacts with Los Angeles County and the activities complained of herein occurred, in whole or in part, in Los Angeles County.

17.     Plaintiff is informed and believes and based thereon alleges that Defendants DOES 1 through 10 are corporations or are other business entities or organizations of a nature unknown to Plaintiff.

18.     Plaintiff is unaware of the true names of Defendants DOES 1 through 10. Plaintiff sues said defendants by said fictitious names and will amend this Complaint when the true names and capacities are ascertained or when such facts pertaining to liability are ascertained, or as permitted by law or by the Court. Plaintiff is informed and believes that each of the fictitiously named defendants is in some manner responsible for the events and allegations set forth in this Complaint.

19.     Plaintiff is informed and believes and based thereon alleges that at all relevant times, each Defendant was a developer, designer, Defendant, distributor, and lessor/seller of vehicles; was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate,

parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants; and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. Plaintiff is further informed and believes and based thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided, and abetted the conduct of all other Defendants. As used in this Complaint, "Defendants" means "Defendants and each of them," and refers to the Defendants named in the particular cause of action in which the word appears and includes BMW and DOES 1 through 10.

20.    At all times mentioned herein, each Defendant was the co-conspirator, agent, servant, employee, and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each of the other Defendants.

21.    Plaintiff makes the allegations in this Complaint without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proving, or persuading, and Plaintiff reserves all of Plaintiff's rights to plead in the alternative.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action arises under a federal statute. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

23.    Jurisdiction is also proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (1) at least one Plaintiff is a citizen of a different state than Defendants; (2) the amount in controversy exceeds $5,0000,000; and (3) there are at least 100 individuals in the putative class that Plaintiff seeks to represent through this action.

24.    This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in California, are present and licensed to conduct business in California, and the events giving rise to this lawsuit occurred in California. Defendant BMW has advertised, marketed, promoted,

distributed, and sold the Class Vehicles in California.

25.   Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants transact substantial business in this District, and a substantial part of the acts, conduct, and events alleged herein occurred within California, including the County of Los Angeles.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

26.   This action has been brought and may properly be maintained as a class action pursuant to the provisions of California Code of Civil Procedure § 382 and Civil Code § 1781 and other applicable laws on behalf of himself and a class as defined as follows:

(1)   <u>California Class</u>: The Class that Plaintiff seeks to represent ("California Class") consists of all persons and entities who purchased or leased, or will purchase or lease, a Subject Vehicle in California, on or after the date Defendant placed the Class Vehicles into the stream of commerce (the Class specifically does not include any claims seeking damages for personal injuries or property damage resulting from defects as alleged herein). Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person. Also excluded is any trial judge who may preside over this case.

(2)   <u>National Class</u>: The Class that Plaintiff seeks to represent ("National Class") is defined to include all persons and entities within the United States who purchased or leased, or will purchase or lease, a Subject Vehicle, on or after Defendant placed the Class Vehicles into the stream of commerce (the Class specifically does not include any claims seeking damages for personal injuries or property damage resulting from defects as alleged herein). Excluded from the National Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of such person. Also excluded is any trial judge who may preside over this case.

27.   There is a well-defined community of interest in the litigation, and the proposed class is ascertainable.

(1)  <u>Common Questions Predominate</u>: Common questions of law and fact exist as to all class members and predominate over any questions that effect only individual members of the class, if there are any individual questions. The common questions of law and fact include, but are not limited to:

    a.    Whether the Class Vehicles were designed, manufactured, sold, and/or otherwise equipped with cup holders that were poor, weak, or inferior in design and/or otherwise defective;

    b.    Whether Defendants knew of the defective nature of the cup holders in the Class Vehicles;

    c.    Whether Defendants violated California consumer protection statutes;

    d.    Whether Defendants breached its express warranties;

    e.    Whether Defendants breached its implied warranties;

    f.    Whether Defendants' cup holders in the Class Vehicles contained an inherent design and/or manufacturing defect;

    g.    Whether the defect in the cup holders the Class Vehicles caused and/or contributed to the damage to the SRS Air Bag Control Module when used for their intended purpose (holding a cup);

    h.    Whether the advertisements and statements made by Defendants were and are false and/or had and have had a tendency to deceive customers, by either failing to disclose the existence of an inherent defect or misrepresenting that the Class Vehicles les contained no defects;

    i.    Whether Defendants failed to adequately warn and/or notify class members and the general public regarding the defects of the cup holders in the Class Vehicles causing damage to the SRS Air Bag Control Module due to their inherent design or defect as described herein;

    j.    Whether Defendants have failed to notify all Class Vehicle owners or lessees of the defect here at issue and repair or correct (or offer to repair or correct) all defective cup holders in the Class Vehicles at no cost to the owners or lessees of the Class Vehicles:

DocuSign Envelope ID: 58A10DC8-2077-40C9-AD58-70D4ABD75F5B

k.    Whether Defendants are obligated to inform the Class of their right to obtain, free of charge, repair, and replacement of the defective components of the defective cup holders in the Class Vehicles;

l.    Whether Defendants adequately informed Dealers of the remedies to the design or defect as described herein;

m.    Whether Defendants are required to provide the New Motor Vehicle Board with a copy of BMW's Service Bulletin(s), if any, concerning the remedies to the design or defect as described herein (or the information contained in the bulletin(s)) so that the public could have access to it;

n.    The nature and extent of Defendant's implied warranty of merchantability for the cup holders;

o.    Whether BMW's warranty to repair defects in the Class Vehicles was part of the basis of the bargain as between BMW and members of the Class;

p.    Whether the presence of the defective cup holders in the Class Vehicles is an unlawful, unfair, and/or "fraudulent" business act or practice within the meaning of the Business and Professions Code §§ 17200 *et seq.*;

q.    Whether Defendants concealed from and/or failed to disclose to Plaintiff and the Class the true defective nature of the cup holders;

r.    Whether Defendants had a duty to Plaintiff and the Class to disclose the defective nature of the cup holders;

s.    Whether the facts concealed and/or otherwise not disclosed by Defendants to Plaintiff and the Class are material facts;

t.    Whether Defendants knew that the cup holders are defective leading to an issue with the SRS Air Bag Control Module meaning that the Class Vehicles were not suitable for use as passenger vehicles and otherwise are not as warranted and represented by Defendants;

u.    Whether Defendants knew or reasonably should have known about these inherent defect(s);

v.    When Defendants learned of this inherent defect;

DocuSign Envelope ID: 58A10DC8-2077-40C9-AD58-79D1ABD75F5B

w.   Whether Defendants continued to lease/sell the Class Vehicles with the defective cup holders as alleged herein despite its knowledge and/or reckless or negligent disregard of this inherent defect;

x.   Whether the Class Members are entitled to damages in terms of cost of replacement (or repair) of the defective cup holders in the Class Vehicles and any out-of-pocket expenses incurred in connection therewith, and if so, the nature and amount of such damages;

y.   Whether Plaintiff and the Class are entitled to recover damages and the proper measure of damages;

z.   Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to restitution;

aa.   Whether Plaintiff and the Class are entitled to declaratory relief sought herein;

bb.   Whether Plaintiff and the Class are entitled to injunctive relief sought herein;

cc.   Whether Plaintiff and the Class are entitled to punitive damages and, if so, the amount of such exemplary damages;

dd.   Whether the defective cup holders caused the amount paid for the purchase or lease of the Class Vehicles to be less than the fair market value of those vehicles; and

ee.   Whether there is a difference between the fair market value of the Class Vehicles and the actual value of those vehicles given the presence of the defective cup holders.

(2)   Typicality: Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and the Class Members sustained the same types of damages and losses.

(3)   Numerosity and Ascertainability: The Classes are so numerous, thousands of persons, that individual joinder of all class members is impractical under the circumstances. The class members can be ascertained by, among other things, lease/sales records, and by responses to methods of class notice permitted by law.

(4)   Adequacy: Plaintiff is a member of the Class and will fairly and adequately protect the interests of the members of the Class. The interests of the Plaintiff are coincident with, and not antagonistic to, those other members of the Class. Plaintiff have retained attorneys who are experienced in class action litigation. Plaintiff will fairly and adequately represent and

protect the interest of the Plaintiff Class. Plaintiff is an adequate representative of the Class, as he does not have interests that are adverse to the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and have retained counsel who are competent and experienced in handling complex and class action litigation on behalf of consumers.

(5)   <u>Superiority and Substantial Benefit</u>: The prosecution of separate actions by individual members of the Class would create a risk of: (1) Inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and (2) Adjudication with respect to the individual members of the Class would substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests. The class action method is appropriate for the fair and efficient prosecution of this action. Individual litigation of the claims brought herein by each Class Member would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years. Class treatment, by contract provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the aforesaid conduct of Defendants. The certification of the Class would allow litigation of claims that, in view of the expense of the litigation may be sufficient in amount to support separate actions.

## FACTUAL ALLEGATIONS

**A.  The Cup Holder Defect**

28.    Plaintiff is informed, believes, and based thereon alleges that the defective cup holders in the Class Vehicles is due, in part, to defective components installed on and in the Class Vehicles.

29.    The cup holders in the Class Vehicles are designed defectively because they are not designed, nor intended, to actually hold cups filled with liquid. When liquid spills into the cup holder, the wires for the SRS (airbag) control module, which sits directly underneath cup holder, get wet and are damaged, causing damage to the air bags. As a result, the air bags can inadvertently deploy.

30.    The defect exposes the driver and occupants of the Class Vehicles, as well as others who

share the road with them, to an increased risk of accident, injury, or death.

31.     As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced the aforementioned defect while operating a Class Vehicle, thus placing themselves and those around them in immediate danger.

32.     The Cup Holder Defect creates a safety hazard due to the potential for liquid to seep past the cup holders and into the space in which the SRS (airbag) control module is stored. When liquid seeps into this area, the wires are damaged, and the airbags are rendered defective.

33.     BMW had a duty to disclose the Cup Holder Defect and the associated out-of-pocket repair costs to Class Members because the defect poses an unreasonable safety hazard, and because BMW had exclusive knowledge or access to material facts about the Class Vehicles that were not known or reasonably discoverable by the Class. BMW, however, failed to disclose the Cup Holder Defect to consumers prior to or at the time of purchase or lease.

34.     The Cup Holder Defect is consequential to Class Members, burdening them with out-of-pocket expenses that would not be necessary but for such defect and depriving them of their original bargains.

**B.  The Class Vehicles, Including the Subject Vehicle, Suffer From the Cup Holder Defect**

35.     On or about December 28, 2019, Plaintiff purchased for valuable consideration a new 2020 BMW X7M501, manufactured by Defendant and bearing the Vehicle Identification Number 5UXCX6C09L9B51525 ("Subject Vehicle"). (A true and correct copy of the Subject Vehicle's purchase contract is attached herein and marked as Exhibit "A".)

36.     The agreed upon value of the Subject Vehicle was $113,345.00. total cost under the contract including sales tax, registration charges, document fees and other collateral charges, such as bank and finance charges, totals $12,7015.00.

37.     In consideration for the Retail Installment Sale Contract ("RISC"), Defendant issued and supplied to Plaintiff several written warranties, including a four (4) year or fifty thousand (50,000) mile factory warranty, as well as other stated warranties fully outlined in the Defendant's Warranty Booklet.

38.     On or about December 28, 2019, Plaintiff took possession of the Subject Vehicle and shortly thereafter experienced the various defects listed below that substantially impair the use, value, and safety

of the Subject Vehicle.

39.     The defects listed below violate the express written warranties issued to Plaintiff by Defendant, as well as the implied warranty of merchantability.

40.     Plaintiff brought the Subject Vehicle to Seller for various defects, including, but not limited to the Cup Holder Defect.

    a. Any additional complaints made by Plaintiff, whether or not they are contained in Defendant's records or on any repair orders.

41.     Plaintiff provided Defendant through Defendant's authorized dealers sufficient opportunities to repair the Subject Vehicle.

42.     Plaintiff brought the Subject Vehicle to Defendant's authorized dealers for repair on two (2) occasions. (True and correct copies of the Subject Vehicle's repair orders are attached herein and marked as Exhibit "B".)

    a. April 26, 2021: Plaintiff brought the Subject Vehicle to Crevier BMW located and doing business at 1500 Auto Mall Drive Santa Ana, CA 92705. Plaintiff brought the Subject Vehicle in for repair because the vehicle's sunvisor locking bar came loose, the left rear door edge seal came loose, and the third-row seat lock message came on intermittently. The Subject Vehicle was at Crevier BMW's place of business for a total of two (2) days. The Subject Vehicle had 7,502 miles on it at the time of repair.

    b. July 8, 2021: Plaintiff brought the Subject Vehicle to Crevier BMW located and doing business at 1500 Auto Mall Drive Santa Ana, CA 92705. Plaintiff brought the Subject Vehicle in for repair because the driver's restrain system malfunction message came on display. The Subject Vehicle was at Crevier BMW's place of business for a total of two (2) days. The Subject Vehicle had 8,338 miles on it at the time of repair.

43.     Defendant, through its authorized dealers, was unable and/or failed to repair the Subject Vehicle within a reasonable number of attempts.

44.     As of the present date, the Subject Vehicle still has ongoing problems that were never resolved despite multiple repair attempts.

45.     Defendant's authorized dealer's employees allegedly performed repairs and performed the

complimentary vehicle inspection of the Subject Vehicle, but there was no change in the defective parts and the Subject Vehicle remains defective

46.     Plaintiff justifiably lost confidence in the Subject Vehicle's reliability and said defects have substantially impaired the use, value, and/or safety of the Subject Vehicle to Plaintiff.

47.     Said defects could not have been discovered by Plaintiff prior to Plaintiff's acceptance of the Subject Vehicle.

48.     As a result of said defects, Plaintiff revoked acceptance of the Subject Vehicle in writing on September 23, 2021. (A true and correct copy of said letter is attached hereto and market Exhibit "C".)

49.     At the time of revocation, the Subject Vehicle was in substantially the same condition as at delivery except for damage caused by its own defects and ordinary wear and tear.

50.     To-date, Defendant has failed to accept Plaintiff's demand for revocation and has refused to provide Plaintiff with the remedies Plaintiff is entitled to upon revocation.

51.     The Subject Vehicle remains in a defective and un-merchantable condition and continues to exhibit the above-mentioned defects that substantially impair its use, value, and/or safety. Plaintiff has and will continue to be financially damaged due to Defendant's failure to comply with the provisions of its express and implied warranties

### C. BMW's Knowledge of the Cup Holder Defect

52.     Defendants have known about the Cup Holder Defect since prior to Plaintiff's purchase through sources not available to Class Members, including but not limited to pre-release testing data, durability testing, early consumer complaints about the Cup Holder Defect to Defendants and their dealers, testing conducted in response to those complaints, aggregate data from BMW dealers, including dealer repair orders and high warranty reimbursement rates, and other internal sources.

53.     Online reputation management (commonly called "ORM" for short), is now a standard business practice among most major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on products. "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content, which is potentially damaging to it, and using customer feedback to try

to solve problems before they damage the individual's or brand's reputation."[2] Many purchasers of vehicles containing the Cup Holder defect have complained about it. Consumers posted numerous complaints on BMW-enthusiast websites and owner message boards about BMW cars equipped with the defective Cup Holders. They also filed numerous complaints with the National Highway Traffic Safety Administration ("NHTSA"). BMW regularly monitored these sources in connection with its ORM activities and therefore would have seen complaints about the Cup Holder Defect way before Plaintiff purchased the Subject Vehicle.

54.     BMW also knew about the Cup Holder Defect from similar complaints about made directly to the BMW NA's Customer Relation and Services Department.

55.     At all relevant times, BMW has been aware of the herein described defect in the cup holders in the Class Vehicles and has consciously disregarded the rights and safety of Plaintiff, members of the Class, and the general public in that numerous complaints about the cup holder's inability to hold cups with liquid damaging the SRS Air Bag Control Module in the Class Vehicles have been lodged with BMW.

- "I'm having a big issue with BMW right now. My fiancé has a 2019 BMW X7, (still under factory warranty) which gave her a restraint system failure notification this past Saturday. We take the car to the dealer on Monday and get a loaner. They diagnose the issue and figure out that the SRS control module has gone bad and they need to order a new one. They call her Wednesday to tell her that the part arrived, but that it'll be a $2200 repair since liquid was spilled into the SRS control module. NOTE: Some liquid had spilled, but it wasn't a lot (like 1-2 ounces). A fast food cup sat in the Cup Holders for 12ish hours and some soda leaked out the bottom. Not even 1/4 of the cup - a very little amount. With the dealer's help, we escalate the issue to BMW corporate asking for them to help cover since it's a clear design flaw that a liquid sensitive control module is sitting directly underneath a Cup Holders, where beverages are designed to go. BMW corporate denies, and the dealer is asking us to cover the $2400 bill. I've been working with the

---

[2]  https://en.wikipedia.org/wiki/Reputation_management#Online_reputation_management.

dealer on this and have called BMW NA Customer Service, which has been no help. I don't think we should be on the hook for using the cup holders in the way they were intended, just to have the SRS control module go out. Likely what'll happen is that we'll pay the bill to get it fixed and trade the car in, but I'd rather not do that. We don't want to drive the car and be afraid of using the cupholders, only to end up drinking another $2400 iced tea. I think BMW should step up with some goodwill and pay to fix this clear design flaw, while preventing it from happening again in the future (sealing the SRS control module). Friends have recommended I take legal action, but I don't want to go that far. Still, I think BMW should do a recall for all X7s and seal the control module. What happens if you're in the middle of nowhere on a road trip, a little liquid spills in the cup holder (we're talking about 1-2 ounces) and your airbags all of the sudden don't work? Are you supposed to pull over and call a tow truck, and get the car towed or keep driving and risk the airbags not deploying if you get into a collision? Lastly, Toyota had a situation just like this and issued a recall to seal the SRS module. BMW is letting a big safety issue happen and should fix this clear design flaw." (May 17, 2021) https://g07.bimmerpost.com/forums/showthread.php?t=1826458.

- "Placed a soft drink in Cup Holders of a 2020 BMW X7. The lid was not on well and some of the soda spilled onto the gearshift center console. Not much, the cup did not come out of the Cup Holders or anything like that just some spilled as driving....the soda was still 95% full in the cup. But...car goes into emergency stop in the left lane of highway and unable to drive. Goes into Park and won't shift into drive or reverse and dash says bring to dealer immediately. Car gets towed to BMW and tech tells me the liquid damaged a part under the gear shift...cost to fix $2900.00 and not covered by warranty." (March 2021) https://www.bimmerfest.com/threads/x7-cup-holders-disable-vehicle.1407422/.

- "Driving my vehicle and on my screen popped up driver seat restraint malfunction, also rear seat restraint malfunction please go to closest dealership. I bring my vehicle to BMW dealership in my town and rep calls me and advise that the Cup Holders sit above the

SRS wiring and that liquid gets through the Cup Holders and dripped on to the wires causing them to no longer work. This is a design flaw I have never spilled a drink in my Cup Holders and even if someone did on accident why is the airbag wires not covered in plastic if going below Cup Holders that leak any type of liquid. I am unable to afford, I do have warranty however BMW stating that this is an outside interference and will not be covered under warranty, so I am having to drive with no airbags. I researched and many others are having same issue with this same year and make different models. This is something that definitely needs to be recalled as it is a design flaw and a safety hazard." (July 20, 2021) https://www.carproblemzoo.com/bmw/x5/seat-belt-problems.php

- "We had a cupholder spill in our 2020 X7. We got the same "restraint system failure notification" on the iDrive. After 4 days at the dealer, they said there was a coffee spill that caused the parts to fail. BMW declined the warranty claim. The dealership contacted their regional rep to attempt approval for a Goodwill warranty claim. This was declined. The dealer was willing to take a 3rd shot at BMW. They asked if I would write an email. In my email, I listed the same thing as others. I mentioned I have owned 4 BMW's and am a loyal customer. I also mentioned this is a serious issue that should be investigated by the NTSB and should be a potential recall. They finally agreed to cover the $2200 charge for the repair. I should see my check in a week or so. It is ridiculous I had to go to this effort on an obvious design flaw. Critical electronics underneath an area prone to liquid spills? Ridiculous." (July 22, 2021) https://g07.bimmerpost.com/forums/showthread.php?t=1826458&page=2.

56.    Despite said knowledge, BMW, however, has failed to notify owners and lessees of the Class Vehicles of the defects associated with their continued operation as alleged herein.

57.    At all relevant times, BMW has not fully disclosed to purchasers or lessees of the Class Vehicles, information regarding the high incidence of the damage to the SRS Air Bag Control Module generated by the defects in the cup holders of the Class Vehicles as detailed herein, nor has it disclosed the true facts that BMW either knew or recklessly or negligently disregarded the existence and reasons for this inherent defect for years.

58.     Plaintiff is further informed, believes, and based thereon alleges that in not correcting or warning of this defect, BMW has violated its own internal procedures, which require prompt investigation and thorough analysis of all potential defects and notification to vehicle owners and lessees describing the defect, as well as instructions relating to the correction of the defect if a defect is determined to exist.

59.     Defendant BMW's conduct, as fully described herein, is in violation of Cal. Civ. Code § 1795.90 *et seq*. (California's Secret Warranty Law) which was enacted to abolish "secret" warranties and practices as alleged herein. The term "secret warranty" is used herein to describe the practice by which an automaker, such as Defendant BMW, establishes a policy to pay for the repair of that defect without making the defect or the policy known to the public at large. A secret warranty is usually created when the automaker, such as BMW, realizes that a large number of its customers are experiencing a defect not otherwise covered by a factory warranty, and decides to offer warranty coverage to individual customers only if the customer complains about the problem first. The warranty is therefore considered "secret" because owners are not notified of it. Instead, the automaker usually issues a service bulletin to its regional officers and/or dealers on how to deal with the defect. Because owners are kept in the dark about the cost-free repair, the automaker only has to reimburse those customers who complain loudly enough. The quiet consumer instead pays to fix the defect her or herself.

60.     Section 1795.92 of the California Secret Warranty Law imposes several duties on automakers, including BMW, each of which is designed to do away with secret warranties.

61.     Specifically, the California Secret Warranty Law requires automakers to notify all eligible owners and lessees ("consumers") by first class mail, within 90 days of adoption, whenever they enact "any program or policy that expands or extends the consumer's warranty beyond its stated limit or under which [the] Defendant offers to pay for all or any part of the cost of repairing, or to reimburse consumers for all or any part of the cost of repairing, any condition that may substantially affect vehicle durability, reliability, or performance[.]"

62.     The California Secret Warranty Law also requires automakers, including BMW, to provide the New Motor Vehicle Board with a copy of the notice described in the preceding paragraph, so the public can view, inspect, or copy that notice.

63.     Additionally, the California Secret Warranty Law requires automakers, including BMW, to

advise their dealers, in writing, of the terms and conditions of any warranty extension, adjustment, or reimbursement program.

64.   The California Secret Warranty Law also requires an automaker, such as BMW, to "implement procedures to assure reimbursement of each consumer eligible under and adjustment program who incurs expenses for repair of a condition subject to the program prior to acquiring knowledge of the program."

65.   Plaintiff is informed, believes, and based thereon alleges that BMW has, when the customers have complained loudly enough, offered to pay for all or any part of the cost of defective cup holder replacement or repair for the Class Vehicles and therefore, BMW is obligated to comply with the provisions of the California Secret Warranty Law, but has not done so. Moreover, by extending its new car warranty to cover the replacement or repair to some customers and not others, BMW has expanded or extended the consumer's express warranty beyond its stated limit.

66.   Specifically, BMW did not notify Plaintiff, or any other owner or lessee, of a Class Vehicle of their right to seek a free repair, replacement, or retrofit of the cup holders and SRS Air Bag Control Module, or to be reimbursed for the cost of repairing the cup holders in these vehicles.

67.   It was only after a class vehicle owners or lessors complained vehemently that BMW made efforts to repair Class Vehicle's cup holders or replace it during each complaint thereof.

68.   BMW, by and through its authorized dealerships, engaged in a nationwide conspiracy to cover up the Class Vehicles' cup holder defect by systematically refusing to document visits by Plaintiff and other Class Members with the subject complaint.

69.   By failing to document these visits and provide repair orders BMW systematically deprived Plaintiff and other Class Members of their lemon law rights by distorting the Class Vehicles' repair histories.

70.   At all times relevant, Plaintiff is informed, believes, and based thereon allege that BMW has not, and did not, comply with the dealer notification provisions of the California Secret Warranty Law, nor has BMW sent a copy of a Service Bulletin to the New Motor Vehicle Board.

71.   At all times relevant, Plaintiff is informed, believes, and based thereon alleges that BMW has refused to provide the free repair, replacement, or retrofitting of the cup holders to owners of the affected

vehicles and has refused to reimburse consumers who have paid to have the cup holders repaired in their vehicles.

72.     Knowing the truth and motivated by profit and market share, Defendant BMW has knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly situated.

73.     The defective cup holders in the Class Vehicles has resulted, and will continue to result, in significant loss and damage to the Class Members, including but not limited to, diminished use and reduced fair market value.

74.     Despite the Defendant BMW's express representations that the Class Vehicles would likely retain their value at a rate higher than competing vehicles and that the vehicles are "reliable," this has simply not occurred. As a result of the problems with the Class Vehicles as described herein, the value of the Class Vehicles has been significantly diminished. On the Internet and in other media outlets, hundreds of people have reported the problems they have experienced with their vehicles. There is little doubt that these reports have seriously diminished the resale value of the Class Vehicles. Given the high value and the luxury status of Class Vehicles, the fact that these vehicles have defective cup holders which ultimately causes damages to the SRS Air Bag Control Module diminishes the value of the vehicles more than the same problems would in lower valued vehicles.

75.     As a result of the Cup Holder Defect, Plaintiff and all other Class Members suffered economic injury because they bought a defective vehicle they otherwise would not have bought and/or paid more for the Class Vehicle than they should have because the defect depreciated the value of the Class Vehicles. Plaintiff and other Class Members have also spent money to have the cup holders and air bags in the vehicles repaired or replaced much more frequently than conventional counterparts.

76.     This action seeks financial compensation for members of the Class in connection with their purchase of the Class Vehicles. Plaintiff does not seek: (i) damages for personal, bodily, or emotional injury or wrongful death; or (ii) damages for becoming subject to liability or legal proceedings by others.

**D.  BMW's New Vehicle Limited Warranty**

77.     The Class Vehicles were sold with a standard BMW New Vehicle Limited Warranty. The New Vehicle Limited Warranty includes the following terms:

**Warrantor** BMW of North America, LLC (BMW NA) warrants during the Warranty Period the U.S.-specification BMW vehicles distributed by BMW NA or sold through the BMWNA European Delivery Program against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser.

**Warranty Begins** Coverage begins on the date of first retail sale or the date the vehicle is first placed into service as a sales demonstrator, Aftersales Mobility Program (AMP) Vehicle or company vehicle, whichever is earlier.

**Warranty Period** The warranty period is 48 months or 50,000 miles, whichever occurs first, except for as noted below.

**Warranty Coverage** To obtain warranty service coverage, the vehicle must be brought, upon discovery of a defect in material or workmanship, to the workshop of any authorized BMW SAV center in the United States (including Puerto Rico), during normal business hours. The authorized BMW SAV center will, without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts. The decision whether to repair or replace said part(s) is solely the prerogative of BMWNA. Parts for which replacements are made become the property of BMW NA. In all cases, a reasonable time must be allowed for warranty repairs to be completed after the vehicle is received by the authorized BMW SAV center.

78.     The New Vehicle Limited Warranty protects Class Vehicle owners from the Cup Holder Defect since it is a defect in material and workmanship.

79.     Defendant breached the express and implied warranties through which they promised to, inter alia, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied,

including the Cup Holder Defect. Because the Cup Holder Defect was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the cup holders and any parts damaged as a result of the defect under the terms of the warranties.

80.     BMW's written warranties also were unconscionable. BMW knew about the Cup Holder Defect at the time of sale or lease, but Plaintiff and class members did not. The Cup Holder Defect can occur at any time during the vehicle's use, including after the warranty period, but prior to the end of the Class Vehicles' useful lives. Plaintiff and class members had no meaningful choice in determining the temporal and/or mileage limits of the warranties. The warranties were drafted by BMW, without any input from consumers, and there was a gross disparity in bargaining power in favor of BMW. As a result, the terms of the warranties unreasonably favored BMW.

81.     Defendants have caused Plaintiff and Class Members to expend money at their dealerships or other third-party repair facilities and/or take other remedial measures related to the Cup Holder Defect in the Class Vehicles such as not using the cup holders at all.

82.     Despite the promises set forth by BMW in the New Vehicle Limited Warranty and the BMW Maintenance Program, Defendants have not recalled the Class Vehicles to repair the Cup Holder Defect and have not offered to reimburse Class Vehicle owners and leaseholders who incurred costs relating to the Cup Holder Defect.

83.     As a result of the Cup Holder Defect, Plaintiff and the Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles. In addition, the value of the Class Vehicles has diminished, including, without limitation, the resale value of the Class Vehicles. BMW enthusiasts who are familiar with the Cup Holder Defect are reluctant to purchase BMW cars.

## TOLLING OF STATUTE OF LIMITATIONS

84.     Any applicable statutes of limitation have been equitably tolled by BMW's affirmative acts of fraudulent concealment, suppression, and denial of the facts alleged herein.  Such acts of fraudulent concealment include but are not limited to intentionally covering up and refusing to publicly disclose critical internal memoranda, design plans, studies, Notices of Action, Problem Detail Reports and other reports of failure and injury, as well as affirmative misrepresentations made to NHTSA and people who called or otherwise contacted BMW attempting to identify and resolve this defect. Through such acts of

1   fraudulent concealment, BMW was able to actively conceal from the public for years the truth about the

2   defective design and manufacture of the cup holders in the Class Vehicles, thereby tolling the running of

3   any applicable statute of limitations.

4       85.   Defendant is estopped from relying on any statutes of limitation because of their

5   misrepresentation and fraudulent concealment of the true facts, as described herein, concerning the cup

6   holders in the Class Vehicles. Defendant was at all times aware of the true nature of the defects as

7   described herein but at all times continued to manufacture and market the Class Vehicles despite this

8   knowledge.

9                              **FIRST CAUSE OF ACTION**

10                              FRAUD AND DECEIT

11                         *(Against All Defendants, Including Does 1 to 10)*

12      86.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of

13   Plaintiff's Complaint for Damages.

14      87.   California Civil Code § 1710 identifies four kinds of fraud: (1) intentional misrepresentation,

15   (2) concealment, (3) false promise, and (4) negligent misrepresentation.

16      88.   Intentional misrepresentation occurs when a defendant represents to another that a fact was

17   true; the representation was actually false; the defendant knew the representation was false (or was

18   reckless about its truth); the defendant intended the other person to rely on the statement; the other person

19   did rely on the statement; the other person was harmed by the reliance; or the other person's reliance on

20   the defendant's representation was a substantial factor in causing the harm suffered. See Civ. Code, §

21   1710(1); *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.

22      89.   The particularity requirement for fraud requires the pleading of facts showing how, when,

23   where, to whom, and by what means the representations were made. (Stansfield v. Starkey (1990) 220

24   Cal.All.3d 59, 73.) Every element of fraud herein with specificity have been plead as follows:

25            a.   How: On December 28, 2019, Plaintiff visited New Century BMW located and doing

26                 business at 1139 W Main Street, Alhambra, CA 91901 with the intent to acquire a

27                 vehicle for personal use. Plaintiff spoke with New Century BMW's General Manager

28                 Stephen Pan, General Sales Manager Sonny Patel, and Finance Manager Sean Wang,

---

who were following the fraudulent scheme designed by Defendant BMW to misrepresent the Cup Holder Defect. The General Manager, General Sales Manager, and Finance Manager at New Century BMW verbally represented to Plaintiff that the Subject Vehicle was free from defects, that it was safe, reliable, and fit for its ordinary purpose. The representatives from New Century BMW said nothing about defective cup holders or their inability to properly hold cups with liquid. Prior to Plaintiff's visit to New Century BMW on December 28, 2019, Defendant BMW represented to Plaintiff and the Class that its vehicles were free from any latent defects. These representations were made within BMW's New Vehicle Limited Warranty.

b.   When: At the time of purchasing the Subject Vehicle (on December 28, 2019) and prior to Plaintiff purchasing the Subject Vehicle.

c.   Where: The oral discussions about the safety, quality, and reliability of the Subject Vehicle took place at New Century BMW located and doing business at 1139 W Main Street, Alhambra, CA 91901. The representations were also made by Defendant BMW on their website, in the owner's manual, and various other BMW published pamphlets and brochures.

d.   To Whom: The statements were made to Plaintiff and Class Members by the representatives at New Century BMW and Defendant BMW.

e.   What Means: The discussions were made by use of English language using simple words. Specifically, Plaintiff was told by the representatives at New Century BMW that the Subject Vehicle was safe, reliable, and fit for its ordinary purpose. Defendant BMW used its online website www.bmw.com as well as its Owner's Manuals and other pamphlets and brochures to represent the Class Vehicles as being free of defects.

90.    The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. *(Tarmann v. State Far Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157.)

-23-

a. Plaintiff spoke with New Century BMW's General Manager Stephen Pan ("General Manager"), General Sales Manager Sonny Patel ("General Sales Manager"), and Finance Manager Sean Wang ("Finance Manager"), who were following the fraudulent scheme designed by Defendant BMW. The descriptions of the Class Vehicles, which misrepresent the cup holders as not defective, have been written and designed by BMW, by and through its team of marketing personnel, including, but not limited to, Adam Sykes (Vice President of Corporate Communications) and Uwe Dreher (Vice President of Marketing). Other key members include Bernhard Kuhn (President and Chief Executive Officer of BMW NA) and David Duncan (Department Head, Corporate and Special Sales).

b. Authority to Speak: The representatives from New Century BMW are responsible for speaking with and explaining the BMW vehicles to consumers. Their authority to speak is self-evident in their job titles. Defendant BMW's online and TV advertisements all invite consumers to visit a BMW authorized dealership and speak with a representative regarding their vehicles. The representatives at New Century BMW were hired to effectuate the plot as designed by BMW's executives (listed previously) to intentionally misrepresent the cup holders as not defective. The executives, by the very nature of their role within Defendant's company, had the authority to design and implement the fraudulent representations regarding the cup holders, implement procedures to train dealership personnel, and did do so in fact.

c. To Whom They Spoke: The representatives from New Century BMW, including the General Manager, General Sales, Manager, and Finance Manager spoke with Plaintiff directly.

d. What they Said or Wrote: Defendant BMW represented to Plaintiff and the Class that the cup holders are not defective and that the Class Vehicles are safe, reliable, and fit for their ordinary purpose. The representatives at New Century BMW in accordance with the messages from Defendant BMW backed up these representations.

e. When It Was Said or Written: At the time of purchasing the Subject Vehicle (on

December 28, 2019). Representations were also made on BMW's website www.bmw.com and in the Owner's Manuals of the Class Vehicles before Plaintiff and the Class purchased and or leased the Class Vehicles.

91.   Moreover, in line with *Committee on Children's Television, Inc. v General Foods Corp.*, 35 Cal.3d 197, 216 (1983), Defendant necessarily possesses full information concerning the facts of the herein controversy since Defendant designed the defective cup holders, trained all personnel on how to discuss the defect when the vehicles are brought in for repair, and advertised the Class Vehicles to the public as safe, reliable, and fit for their ordinary purpose. Therefore, despite the heightened pleading standard in a fraud case, in the present matter Defendant is well aware of the entire chain of events which has culminated in this lawsuit.

92.   "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); b) knowledge of falsify (or 'scienter'); c) intent to defraud, i.e., to induce reliance; d) justifiable reliance; and e) resulting damage." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

   a.   Here, Defendant BMW misrepresented the quality of the cup holders in the Class Vehicles. Defendant BMW told Plaintiff and the Class that there are no problems with the Class Vehicles and that the Vehicles are safe, reliable, and fit for their ordinary purpose. New Century BMW discussed the safety and reliability of the Class Vehicle with Plaintiff and the Class under the guidance of Defendant BMW.

   b.   Defendant BMW knew that their representations were false and acted with the conscious and reckless disregard to the truth or falsity of such misrepresentations, promises, and wrongful acts.

   c.   Defendant BMW intended to induce Plaintiff and Class Members to rely on their misrepresentations so that Plaintiff and Class Members would lease and/or purchase the Class Vehicles. The only way to induce the lease and the sale of the Class Vehicles was to conceal the Cup Holder Defect.

   d.   Plaintiff had no reason to know that the Class Vehicles were defective and as such their reliance was justifiable. To show reasonable reliance, a plaintiff mush show: "1)

the matter was material in the sense that a reasonable person would find important to
determine how he or she would act...' and 2) it was reasonable for plaintiff to have
relied on the misrepresentation." (*Hoffman v. 162. North Wolfe LLC* (2014) 228
Cal.App.4th 1178, 1194.) "Although a plaintiff's negligence in failing to discover the
falsity of the statement or the suppressed information is not a defense to fraud..., a
plaintiff's particular knowledge and experience should be considered in determining
whether the reliance upon the misrepresentation or nondisclosure was justified."
(*Ibid*.).

- A reasonable person wants to know whether their cup holders are safe,
  reliable, and fit for their ordinary purpose and will not cause damage to the
  SRS Air Bags Control Module. Defendant BMW, however, continues to
  represent that the cup holders are not defective. Plaintiff did their own
  research and asked the representatives at New Century BMW if the Subject
  Vehicle was worth the purchase. Defendant BMW used their status as experts
  in the industry to their advantage and led Plaintiff and the Class to falsely
  believe that the Class Vehicles are exceptional, free from defects, safe,
  reliable, and fit for their ordinary purpose. This is clearly not true, but
  unfortunately Plaintiff and the Class did not learn about this until after they
  already purchased/leased the Vehicle and experienced the dangers of the Cup
  Holder Defect firsthand. After all these assurances, it is no surprise that
  Plaintiff was confused and upset when the Vehicle's SRS Air Bag Control
  Module became defective.

e.  A plaintiff asserting fraud by misrepresentation must establish a complete causal
relationship between the alleged misrepresentations and the harm claimed to have
resulted therefrom. (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481,
1499.) "This requires a plaintiff to allege specific facts not only showing he or she
actually and justifiably relied on the defendant's misrepresentations, but also how the
actions he or she took in reliance on the defendant's misrepresentations caused the

alleged damages." (*Ibid*.) But for the representations that the Subject Vehicle was free from defects, Plaintiff and Class Members would not have acquired the Class Vehicle.

93.     The acts and omissions of Defendant BMW, by and through their joint representatives the General Manager, General Sales Manager, and the Finance Manager at New Century BMW, as complained of herein, were extreme and outrageous and Defendant BMW is guilty of malice, oppression, and fraud in that its conduct was despicable, subjected Plaintiff to cruel and unjust hardship, and was carried on with a willful and conscious disregard for Plaintiff's rights or health for the sole purpose and intent of causing Plaintiff's damages and losses. Plaintiff is therefore entitled to recover an award of punitive damages for the sake of example and by way of punishing Defendant BMW.

94.     As such, Plaintiff's justifiable and reasonable reliance on the intentional misrepresentations made by Defendant BMW and the representatives at New Century BMW resulted in substantial damage.

95.     As a direct and proximate result of the acts and omissions of Defendant BMW, Plaintiff has suffered damages for which relief is sought herein.

96.     Plaintiff's suffered damages and was harmed when she relied on Defendant BMW's false representations that the cup holders are not defective and that the Class Vehicles are safe, reliable, and fit for their ordinary purpose. The full extent of the damages goes beyond the fee for purchasing the Class Vehicle. Damages include the depreciation in value of the Subject Vehicle, the costs of replacing the cup holders and SRS Air Bag Control Module, the costs of a replacement vehicle, and emotional distress.

97.     The harm to Plaintiff was not otherwise inevitable or due to unrelated causes because Plaintiff would simply not have leased the vehicle at all.

## SECOND CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

*(Against All Defendants, Including Does 1 to 10)*

98.     Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint for Damages.

99.     Plaintiff is an intended third-party beneficiary of contracts between Defendant BMW and its authorized dealerships, representatives, and agents. Plaintiff purchased the Subject Vehicle from a BMW

authorized dealership, representative, and/or agent. As such, Plaintiff was the intended (and not incidental) third party beneficiary of any and all agreements entered into among Defendant and its authorized dealerships, representatives, and agents, and any warranties, express or implied, flowing therefrom. Plaintiff has had sufficient direct dealings with either BMW or its agents (dealerships) to establish privity of contract.

100.    Under California law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Cal. Comm. Code § 2313(1)(a). Additionally, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Id. § 2313(1)(b).

101.    BMW's New Car Limited Warranty ("NCLW"), which provides coverage for all BMW vehicle systems up to four years or 50,000 miles, whichever occurs first, is given to the owner of a BMW vehicle and sold by an authorized BMW dealer in the United States. The NCLW covers any repair or replacement to correct a defect in the Defendant's material and workmanship (i.e., a mechanical defect). An authorized BMW dealer will repair the defective part or replace it free of charge.

102.    BMW's written representations in the warranty manual(s), sale brochures, pamphlets, and other writings disseminated by BMW in the promotion, marketing, and sales of the Class Vehicles constitutes an express warranty and/or warranties to Plaintiff and the Class Members.

103.    BMW's advertising campaign(s) focused on its vehicles being free of defects, including but not limited to, that "there is no substitute" to the Class Vehicles being as printed in their product brochures, pamphlets, and media, and which focused on excellence, reliability, and safety of these vehicles. As such, BMW expressly warranted that such vehicles were free from inherent and latent defects.

104.    The elements of a claim for breach of express warranty under Uniform Commercial Code ("UCC") 2-313 are as follows: (a) there was a sale of goods; (b) there was an affirmation of fact or promise about the quality of the goods, or a sample or model was provided; (c) the promise or affirmation (or sample or model) was part of the basis of the bargain; (d) the goods were not as warranted; and (e) an economic loss or personal injury occurred as a result of the breach of warranty.

105.    BMW's written representations in the warranty manual(s), sale brochures, pamphlets, and other writings disseminated by BMW in the promotion, marketing, and sales of the Class Vehicles constitutes an express warranty and/or warranties to Plaintiff and the Class Members.

106.    BMW's advertising campaign(s) focused on its vehicles being free of defects, including but not limited to, the Class Vehicles being "truly exceptional," "dialed to perfection," "equipped to deliver flawlessly," and "Best in Test" as printed in their product brochures, pamphlets, and media, and which focused on excellence, reliability, and safety of these vehicles. As such, BMW expressly warranted that such vehicles were free from inherent and latent defects.

107.    The Class Vehicles are manufactured goods and at all times relevant, Defendant manufactured, sold, and placed these products into the stream of commerce. The transactions by which the Class members purchased the Class Vehicles were transactions for the sale of goods and at all times relevant, Defendant BMW was in the business of manufacturing, selling, and/or distributing these goods for sale throughout the United States, including California.

108.    BMW, through its the warranty manual(s), sales brochures, pamphlets, and other writings guaranteed that the vehicles were free from inherent and latent defects.

109.    For each of the Class Vehicles at issue, BMW issued a standardized express written warranty which covers the base vehicle, including without limitation, the cup holders, and the SRS Air Bag Control Module, and warranted that the vehicles were free of defects. Applying any BMW warranty limitation period to avoid the need to repair this particular defect would be unconscionable in that, *inter alia*, the vehicles at issue contain an inherent latent defect which could arise at any time, the defect was already present at the time of delivery, BMW was either aware of or consciously and/or recklessly disregarded this defect which could not be discovered by Plaintiff and members of the class at the time of such purchase or lease, and purchasers or lessees lacked any meaningful choice with respect to the warranty terms.

110.    The guarantee that the Class Vehicles were free from inherent and latent defects was part of the basis of bargain by and between consumers and Defendant BMW.

111.    Defendant has and continues to breach said express warranties in the following ways, among others as follows:

a.  At the time of manufacture and lease/sale of the Class Vehicles, there existed an inherent, latent defect in the cup holders and the SRS Air Bag Control Module;

b.  The cup holders and the SRS Air Bag Control Module in the Class Vehicles were not free from defects;

c.  The cup holders and the SRS Air Bag Control Module in the Class Vehicles was and is at all relevant times defective;

d.  BMW has refused to take responsibility for the defective cup holders and the SRS Air Bag Control Module in the Class Vehicles, denying all liability or even the existence of the defect as described herein;

e.  BMW has engaged in a nationwide conspiracy to cover up the Class Vehicles' defect by systematically refusing to document visits by Plaintiff and other Class Members to authorized dealerships with the subject complaint;

f.  By failing to document these visits and provide repair orders, BMW has systematically deprived Plaintiff and other Class Members of their lemon law rights by distorting the Class Vehicles' repair histories;

g.  The cup holders and the SRS Air Bag Control Module is not unequivocal or uncompromising as represented by BMW since they were defective at the time of manufacture, sale, and delivery to Plaintiff and others similarly situated; and

h.  Class Vehicles are simply not fit for their ordinary purpose as warranted by BMW since the defective cup holders and the SRS Air Bag Control Module causes the Class Vehicles to be dangerous and demonstrates that the Class Vehicles are defective.

112.  Plaintiff brought the Subject Vehicle to a BMW dealership for service two (2) times. On April 26, 2021 and July 8, 2021.

113.  Plaintiff LIN provided initial notice to Defendant BMW of their breach as alleged herein on September 23, 2021.

114.  To date, Defendant has failed to remedy their breach pursuant to Plaintiff's notices.

115.  Plaintiff and all other Class Members suffered economic injury because they bought a defective vehicle they otherwise would not have bought and/or paid more for the Subject Vehicle than

1   they should have because the defect depreciated the value of the Class Vehicles. Plaintiff and other Class

2   Members have also spent money to have the cup holders and the SRS Air Bag Control Module in the

3   vehicles repaired or replaced much more frequently than conventional counterparts.

4       116.    As a result of Defendant's breach of express warranties as set forth above, Plaintiff and others

5   similarly situated have suffered and will continue to suffer damages in an amount to be determined at

6   trial.

7                               **THIRD CAUSE OF ACTION**

8                               BREACH OF IMPLIED WARRANTY

9                          *(Against All Defendants, Including Does 1 to 10)*

10      117.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of

11  Class Action Complaint for Damages.

12      118.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary

13  purpose was implied by law in the instant transaction.

14      119.    Implied warranties are promises from the seller to the buyer that the product, if used as it is

15  supposed to be used, is fit for that purpose or of an average quality. See U.C.C. 2-315 and 2-314.

16      120.    The elements of a claim for breach of the implied warranty of merchantability under § 2-314

17  are: (a) there was a sale of goods; (b) the seller was a merchant with respect to goods of that kind; (c)

18  the goods were not "merchantable" at the time of sale; and (d) an economic loss or personal injury

19  occurred as a result of the breach of warranty.

20      121.    The Class Vehicles are manufactured goods. The transactions by which the Class members

21  purchased the Class Vehicles were transactions for the sale of goods.

22      122.    At all times relevant, Defendant BMW was in the business of manufacturing, selling, and/or

23  distributing these goods for sale throughout the United States, including California. At all times relevant,

24  Defendant BMW manufactured, sold, and placed these products into the stream of commerce.

25      123.    Defendant BMW impliedly warranted that the Class Vehicles, which it designed,

26  manufactured, and sold or leased to Plaintiff and Class Members, were merchantable, fit, and safe for

27  their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings.

28  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and

safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles and their cup holders and the SRS Air Bag Control Module suffered from the defect at the time of sale which causes the air bags to inadvertently deploy. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

124.    Defendant BMW impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their cup holders and air bags were manufactured, supplied, distributed, and/or sold by Defendant BMW were safe and reliable for providing transportation and would not cause liquid to leak into the air bag module causing the air bags to inadvertently deploy; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

125.    Contrary to the applicable implied warranties, the Class Vehicles were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class members with reliable, durable, and safe transportation.

126.    The Class Vehicles were not suited for the ordinary purposes for which they were sold or leased. Cup holders are intended to hold cups filled with liquid while consumers, like Plaintiff, drive in their vehicles. The cup holders in the Class Vehicles are not deigned, however, to hold cups filled with liquid. When cups filled with liquid are placed in the cup holders of the Class Vehicles, the liquid leaks into the area in which the wires for the SRS Air Bag Control Module sit. The liquid damages the wires which in turn causes the air bags to inadvertently deploy for no reason and with no warning.

127.    Defendant BMW further breached its implied warranty by failing to disclose the Cup Holder Defect.

128.    Upon discovering the latent defects in the defective cup holders and the SRS Air Bag Control Module in the Class Vehicles, Plaintiff took reasonable steps to notify Defendant BMW within a reasonable time that the product did not have the expected quality and contained the defects as alleged herein. All conditions precedent occurred or have been performed.

129.    BMW has actual notice of its breach of warranty. Through consumer complaints and information from its own repair facilities, BMW learned the defect, the existence an ubiquity of which it knew since at least 2013, has been the subject of publicized consumer disputes nationwide.

130.     Despite Plaintiff's and the other Class Members' normal and ordinary use, maintenance, and upkeep, the cup holders and the SRS Air Bag Control Module have failed. The manufacturing and/or design defect existed at the time BMW transferred the Class Vehicles from its possession or control. The defect rendered the Class Vehicles unfit for their ordinary use and caused the vehicles to be unable to perform the tasks they were designed, advertised, and sold to perform.

131.     The presence of the defect in the Class Vehicles purchased by the Class substantially impairs the use and value of those goods. Moreover, the defects in the Class Vehicles render them non-conforming goods and/or were not the same quality as those generally accepted in the trade, were not fit for the ordinary purposes for which the goods were used, were of poor or below average quality within the description, and/or did not conform to the affirmations of fact made by BMW in its labeling, product inserts, and/or warranty materials it provided along with the lease/sale of the Class Vehicles.

132.     As a direct and proximate result of the Cup Holder Defect in the Class Vehicles' design and manufacture and Defendant BMW's improper disclosures, Plaintiff has sustained injuries, damages, and loss.

133.     Defendant BMW is liable to Plaintiff and the Class Members for damages caused by the above defects and inadequacies in the design and manufacture of the Class Vehicles.

134.     As a direct and proximate result of the foregoing, Plaintiff and all other Class Members sustained significant loss and damage, including but not limited to, a reduction in fair market value and they did not receive the benefit of their bargain. Furthermore, Plaintiff and all other Class Members paid much more for the vehicle than they should have.

135.     Plaintiff and all other Class Members suffered economic injury because they bought and/or leased a defective vehicle they otherwise would not have bought/leased and/or paid more for the Class Vehicle than they should have because the defect depreciated the value of the Class Vehicles. Plaintiff and other Class Members have also spent money to have the cup holders and the SRS Air Bag Control Module in the vehicles repaired or replaced much more frequently than conventional counterparts.

136.     Privity is not required in this case because Plaintiff and the Class Members' Class Vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

137.     Nevertheless, Plaintiff and Class members are intended third-party beneficiaries of contracts,

including express warranties, between Defendant BMW and its authorized dealerships, representatives, and agents. On information and belief, Defendant BMW's authorized dealerships, representatives, and agents purchased Class Vehicles from Defendant pursuant to valid and enforceable agreements. Because Plaintiff and Class members—rather than Defendant BMWs' authorized dealerships, representatives, and agents—were the intended end users of Class Vehicles, Plaintiff and Class members were the intended (and not incidental) third party beneficiaries of the agreements entered into among Defendant and its authorized dealerships, representatives, and agents, and any warranties, express or implied, flowing therefrom. Indeed, Defendant BMW's authorized dealerships, representatives, and agents did not and would not purchase Class Vehicles for personal use, therefore the implied warranties flowing to them actually are intended to protect their customers from the losses the Class Vehicles have and will continue to cause them. The dealers were not intended to be the ultimate consumers of the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. As such, Plaintiff and the other Class Members have had sufficient direct dealings with either BMW or its agents (dealerships) to establish privity of contract between Plaintiff and the Class Members. Accordingly, Defendant BMW is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

**FOURTH CAUSE OF ACTION**

BREACH OF WARRANTY

SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE § 1790 *ET SEQ.*

*(Against All Defendants, Including Does 1 to 10)*

138.    Plaintiff re-alleges and incorporates by reference as fully set forth herein, all paragraphs of Class Action Complaint for Damages. Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint for Damages.

139.    Plaintiff and other Class members who purchased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

140.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

141.    Defendant BMW is a "Defendant" within the meaning of Cal. Civ. Code § 1791(j).

142.    Defendant BMW impliedly warranted to Plaintiff and the Class that its vehicles were

"merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792, as described above.

143.    Cal. Civ. Code § 1791.1(a) states that "implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purpose for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label.

144.    The Class Vehicles would not pass without objection in the automotive trade because of the Cup Holder Defect that causes liquid to leak into the air bag module causing the air bags to inadvertently deploy leading to a serious and unreasonable safety risk to Vehicle drivers, occupants, and nearby third parties.

145.    The Vehicles are not adequately labeled because the labeling fails to properly disclose the Cup Holder Defect and its dangerous safety implications.

146.    Defendant BMW breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the Cup Holder Defect.

147.    The Cup Holder Defect has deprived Plaintiff and the Class of the benefit of their bargain and have caused the Class Vehicles to depreciate in value. Plaintiff and Class Members have ultimately paid more money for the Class Vehicles then they otherwise would have had the Cup Holder Defect been properly disclosed. In fact, Plaintiff and Class Members would not have even purchased the Vehicles in the first place if disclosure was proper. Plaintiff and other Class Members have also spent money to have the cup holders and air bags in the vehicles repaired or replaced much more frequently than conventional counterparts.

148.    The time limits contained in Defendant BMW's warranty period are also unconscionable and inadequate to protect Plaintiff and the Class Members. Among other things, Plaintiff Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonable favor Defendant BMW. A gross disparity of bargaining power existed between Defendant BMW and Plaintiff and Class Members and Defendant BMW knew or should have known that the Class Vehicles cup holders were defective at the time if sale and would fail well before the end of their useful lives.

149.    As a direct and proximate result of Defendant BMW's breach of its express warranties,

-35-

Plaintiff and the other Class Members received goods whose condition substantially impairs their value to Plaintiff and the other Class Members. Plaintiff and the other Class Members have been damaged as a result of, *inter alia,* the diminished value of Defendant BMW's products, the products' malfunctioning, and actual and potential increased maintenance and repair costs.

150.     Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff and the other Class Members are entitled to damages and other legal and equitable relief including, at their election, or the overpayment or diminution in value of these vehicles.

151.     Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class Members are entitled to costs and attorney fees.

**FIFTH CAUSE OF ACTION**

VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT

CIVIL CODE § 1750 ET SEQ.

*(Against All Defendants, Including Does 1 to 10)*

152.     Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

153.     This cause of action is brought pursuant to the California Consumer Legal Remedies Act, *California Civil Code § 1750, et seq.* ("CLRA").

154.     The Class Vehicles are "goods" under the CLRA that was bought primarily for personal, family, or household purposes as defined in the CLRA in *California Civil Code § 1761(a).*

155.     Plaintiff and each member of the Class are "consumers" within the meaning of *California Civil Code § 1761(d).*

156.     Defendants are "persons" as defined by *California Civil Code § 1761(c).*

157.     Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

158.     The Consumer Legal Remedies Act ("CLRA"), *California Civil Code § 1750 et seq.* applies to Defendant's actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

159.    The CLRA prohibits the following unfair methods of competition and unfair or deceptive acts or practices, among others: (5), Defendant represented that the Class Vehicles have characteristics and benefits that they do not have; (7) Defendant represented that the Class Vehicles are of a particular standard, quality, or grade when they are not; (9) Defendant advertised the Class Vehicles without an intent to sell them as advertised; (14) Defendant misrepresented that a transaction confers or involves legal rights, obligations, or remedies of Plaintiff and other members of the Class concerning the Class Vehicles when they were not; (18) Defendant represented that the Class Vehicles were supplied in accordance with previous representations when they were not; and (19) Defendant unlawfully inserted an unconscionable provision in the contract to purchase or lease the Class Vehicles here at issue by inserting into such contracts provisions where the consumers purport to waive a right or benefit provided by law to obtain a repair or a retrofit of an inherent defect without a clear statement and consent to such provisions.

160.    Defendant had a duty to disclose to Plaintiff and the Class that the cup holders cause liquid to leak into the air bag module causing the air bags to inadvertently deploy because (1) such disclosures were necessary in order to make its other statements not misleading; (2) they were known material facts; (3) Defendant knew that it had exclusive knowledge that was not accessible to Plaintiff and the Class; and (4) it was reasonable for Plaintiff and the Class to expect disclosure of such facts.

161.    Defendant violated the CLRA by misrepresenting the condition of the cup holders and air bags.

162.    Defendant has a deceptive pattern and practice of: (1) failing to inform consumers that the Class Vehicles' cup holders are defective; and (2) falsely representing that the cup holders can hold cups filled with liquid as intended.

163.    Defendant's deceptive acts alleged herein occurred in the course of selling a consumer product and Defendants has done so continuously through the filing of this Complaint.

164.    If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and other members of the general public will continue to suffer harm.

165.    As a direct and proximate result of Defendant's violation of Civil Code § 1770 *et seq.*, Plaintiff and other Class members have suffered irreparable harm and monetary damages entitling them

to both injunctive relief and restitution. Plaintiff, on behalf of herself and on behalf of the Class, seek damages and all other relief allowable under the CLRA.

166. Defendant's wrongful conduct, as set forth above, was willful, oppressive, and malicious. Accordingly, Plaintiff, and others similarly situated, seek punitive damages against Defendant in an amount to deter Defendant from similar conduct in the future.

167. Pursuant to Civil Code § 1782, Plaintiff provided notice to Defendant at least thirty days prior to filing this action for damages.

168. Defendant failed to make the showing required by Civil Code § 1782(c).

169. As a result, Plaintiff seeks actual and punitive damages for violation of the CLRA. In addition, pursuant to Civil Code § 1782(a)(2), Plaintiff and members of the class are entitled to an order enjoining the above-described wrongful acts and practices of Defendant, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court under Civil Code § 1780.

170. On behalf of the general public, Plaintiff requests that an injunction against Defendant be issued to enjoin them from continuing to engage in the unlawful conduct alleged herein, namely selling used cars without disclosing their accurate history, condition, and price.

171. Plaintiff is also entitled to recover attorney's fees and costs under the CLRA in connection with this litigation.

### SIXTH CAUSE OF ACTION

VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

BUSINESS AND PROFESSIONS CODE § 17200 ET SEQ.

*(Against All Defendants, Including Does 1 to 10)*

172. Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

173. Plaintiff has standing to bring this claim because Plaintiff has lost money or property as a result of the misconduct alleged. Furthermore, Plaintiff is seeking injunctive relief on behalf of a class who does not have the same knowledge as Plaintiff. Therefore, there is a likelihood of repeat injury to the Class Members who are unaware of Defendant's misrepresentations. *See Harris v. Las Vegas Sands*

-38-

*L.L.C.*, No. 12-10858, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) (Gee, J.).

174.     A plaintiff has standing when they (1) lose or are deprived of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) the economic injury was the result of, i.e., caused by, the unfair business practice of false advertising that is the gravamen of the claim. *Kwikset Corp. v. Superior Court* (201) 51 Cal.4th 310, 322.

175.     Economic injury from unfair competition exists if a plaintiff (1) surrenders in a transaction more, or acquires in a transaction less, than he or she otherwise would have; (2) has a present or future property interest diminished; (3) is deprived of money or property to which he or she has a cognizable claim; or (4) is required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. *Id.* at 323.

176.     Plaintiff brings this claim on behalf of herself, and others similarly situated in her representative capacity as a private attorney general against Defendant BMW for their unlawful, unfair, fraudulent, untrue, and/or deceptive business acts and/or practices pursuant to California Business and Professions Code § 17200 *et seq.* ("UCL"), which prohibits all unlawful, unfair, and/or fraudulent business acts and/or practices.

177.     Plaintiff asserts these claims as they are representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that Defendant BMW should be required to pay or reimburse under the restitution remedy provided by California Business and Professions Code § 17200 *et seq.*

178.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant BMW as alleged herein constitute unlawful, unfair, and/or fraudulent business acts and/or practices within the meaning of California Business and Professions Code § 17200 *et seq.*

179.     The acts, omissions, misrepresentations, practices, non-disclosures, and/or concealments of material facts, and/or deception alleged in the preceding paragraphs occurred in connection with Defendant BMW's conduct of trade and commerce in California.

180.     As a direct and proximate result of the aforementioned acts, Defendant BMW received monies expended by Plaintiff and others similarly situated who leased/purchased the Class Vehicles.

181.     A business act or practice is **unlawful** if it violates a law. Laws that can be used to find an

unlawful business practice include statutes that are civil or criminal in nature and can range from federal and state statutes to municipal regulations. Defendant BMW's acts and practices are **unlawful** because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and California Commercial Code § 2313. 95.

182.     A business act or practice is **unfair** if it is one that offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Defendant BMW has engaged in **unfair** business acts or practices in that the justification is outweighed by the gravity of the inevitable harm to the consumer when the air bags inadvertently deploy and the consumer is unaware, particularly considering the available alternatives. The defective design of the cup holders and the fact that the cup holders do not contain liquid, causing liquid to leak into the air bag module and causing the air bags to inadvertently deploy offends public policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury to consumers because it induces consumers to purchase the Class Vehicles that ultimately diminishes the value of the Class Vehicles and puts the Plaintiff and other consumers in grave danger since they are unaware of the issue with the air bags. Furthermore, Defendant BMW's conduct and intent to widely market the Class Vehicles to California consumers, which involved false and misleading advertising, offends the established public policy of the State of California and is immoral, unethical, oppressive, unscrupulous, and substantially injurious.

183.     A business act or practice is **fraudulent** if it is likely to deceive members of the public. Defendant BMW has engaged in **fraudulent** business acts or practices in that the representations and omissions of material fact described above have a tendency and likelihood to deceive purchasers/lessees of the Class Vehicles and the general public, as is clear by the outcome with Plaintiff. Defendant BMW falsely advised class members that the non-conformities exhibited by the Class Vehicles as outlined herein were in fact normal and did not constitute a defect.

184.     Defendant BMW aggressively promoted and advertised their Class Vehicles in an unlawful, unfair, fraudulent, untrue, and/or deceptive manner that is and was likely to deceive the public.

185.     Defendant BMW falsely advised class members that the non-conformities exhibited by the Class Vehicles as outlined herein were in fact normal and did not constitute a defect.

186.     Defendant BMW actively engaged in a custom and practice of encouraging failure to and/or

-40-

failing to document complaints by class members regarding the non-conformities exhibited by the Class Vehicles as outlined herein.

187.   Defendant BMW's misconduct as alleged in this action constitutes negligence and other tortious conduct and this misconduct gives Defendant BMW an unfair competitive advantage over their competitors.

188.   Defendant BMW has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class members that the Class Vehicles suffer from a defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Defendant BMW should have disclosed this information because it was in a superior position to know the true facts related to the defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to the defect.

189.   The defective cup holders and air bags constitutes a safety issue that triggered Defendant BMW's duty to disclose the safety issue to consumers.

190.   These acts and practices have deceived Plaintiff and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiff and the Class members, Defendant BMW breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the Class members. The omissions and acts of concealment by Defendant BMW pertained to information that was material to Plaintiff and the Class members, as it would have been to all reasonable consumers.

191.   The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided.

192.   Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant BMW, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200

193.   As a direct and proximate result of Defendant BMW's violations, Plaintiff and Class Members suffered injuries in fact and lost money because they purchased the Class Vehicles and paid

the price they paid believing the Vehicles to be free from defects when they were not.

194.     Plaintiff still has the defective Subject Vehicle and continues to be harmed by its defects.

195.     Defendant BMW's conduct constitutes unfair acts or practices conducted in the course of Defendant BMW's respective businesses, and thereby constitutes violations of California Business and Professions Code § 17200 *et seq.*  Defendant BMW's conduct and intent to widely market the Class Vehicles to California consumers involved false and misleading advertising.  Such conduct offends the established public policy of the State of California and is immoral, unethical, oppressive, unscrupulous, and substantially injurious.

196.     Pursuant to California Business and Professions Code § 17203 of the UCL, Plaintiff seeks an order of this Court enjoining BMW from continuing to engage in unlawful, unfair, or fraudulent business practices, and any other act prohibited by the UCL. Plaintiff also seeks an order requiring BMW to comply with the terms of the California Secret Warranty Law by (a) notifying Class Members of the defective warranty; (b) providing free installation of the re-designed cup holders to Class Members, (c) notifying dealers of the facts underlying the cup holder problem and the terms of the cup holder warranty, (d) notifying the New Motor Vehicle Board of the cup holder warranty; and (e) identifying and reimbursing Class Members who have paid for repairs (including the re-designed cup holders) to be installed.  Plaintiff also seek an order (i) enjoining BMW from failing and refusing to make full restitution of all moneys wrongfully obtained; and (ii) disgorging all ill-gotten revenues and/or profits earned or retained as a result of BMW's violations of the California Secret Warranty Law.

197.     As set forth, above, BMW has violated the California Secret Warranty Law.  As a direct and proximate result of BMW's conduct, BMW obtained secret profits by which it became unjustly enriched at Plaintiff's and the Class Members' expense.

198.     Accordingly, Plaintiff seeks an order establishing BMW as a constructive trustee of the secret profits that served to unjustly enrich BMW, together with interest during the period in which BMW has retained such funds and requiring BMW to disgorge those funds in a manner to be determined by the Court.

199.     In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected, and profits realized by Defendant BMW.

200.    Defendant BMW's conduct, as fully described herein, constitutes acts of untrue and misleading advertising and are, by definition, violations of California Business and Professions Code § 17200 *et seq.*

201.    The unlawful, unfair, deceptive and/or fraudulent business practices and/or false and misleading advertising of Defendant BMW, as fully described herein, present a continuing threat to members of the public to be injured by the Class Vehicles equipped with the defective cup holders as alleged herein.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500 ET SEQ.

*(Against All Defendants, Including Does 1 to 10)*

202.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

203.    Plaintiff has standing to bring this claim because Plaintiff has lost money or property as a result of the misconduct alleged. Furthermore, Plaintiff is seeking injunctive relief on behalf of a class who does not have the same knowledge as Plaintiff. Therefore, there is a likelihood of repeat injury to the Class Members who are unaware of Defendant BMW's misrepresentations. *See Harris v. Las Vegas Sands L.L.C.*, No. 12-10858, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) (Gee, J.).

204.    *Business & Professions Code § 17500* prohibits unfair, deceptive, untrue, and misleading advertising in connection with the disposal of personal property (among other things), including, but not limited to, false statements as to worth, value, and former price.

205.    Defendant BMW caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant BMW, to be untrue and misleading to consumers, including Plaintiff and the other Class members. For example, Defendant BMW assured Plaintiff and Class Members that the Class Vehicles were in excellent mechanical condition, and were safe, reliable, and fit for their ordinary purpose which included cup holders that do not cause liquid to leak into the air bag module causing the air bags to inadvertently deploy.

DocuSign Envelope ID: 58A10DC8-2077-40C8-AB58-70B1ABD75F5B

206.     Defendant BMW has violated California Business & Professions Code § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

207.     Plaintiff still has the defective Subject Vehicle and continues to be harmed by its defects.

208.     Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant BMW's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Defendant BMW with respect to the safety and reliability of the Class Vehicles. Defendant BMW's representations were untrue because the Class Vehicles are distributed with defective cup holders. Had Plaintiff and the other Class members known this fact, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

209.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant BMW's business. Defendant BMW's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide

210.     The acts of untrue and misleading advertising by Defendant BMW described above present a continuing threat to members of the general public in that Defendant BMW persist and continue to engage in these practices with respect to the general public and will not cease doing so unless and until an injunction is issued by this Court.

211.     As a direct and proximate result of Defendant BMW's conduct, Plaintiff has suffered damages for which relief is sought herein. As such, Plaintiff, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendant BMW from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Defendant BMW acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

///

///

## EIGHTH CAUSE OF ACTION

### STRICT LIABILITY

*(Against All Defendants, Including Does 1 to 30)*

212.   Plaintiff re-allege and incorporate by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

213.   The Subject Vehicle was defective in its design and/or its manufacture.

214.   BMW NA was the Defendant of the Subject Vehicle.

215.   The Cup Holder Defect existed when it left Defendant's possession.

216.   The Cup Holder Defect was the cause of Plaintiff's injury.

217.   Plaintiff's injury resulted from his reasonably foreseeable use of the Subject Vehicle.

218.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages for which relief is sought herein.

## NINTH CAUSE OF ACTION

### NEGLIGENCE

*(Against All Defendants, Including Does 1 to 10)*

219.   Plaintiff re-allege and incorporate by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

220.   At all times mentioned herein, Defendant was engaged in the business of designing, manufacturing, testing, distributing, selling, inspecting, repairing, marketing, constructing, labeling, and advertising of the Subject Vehicle.

221.   At all times mentioned herein, Defendant had a duty of care in the designing, manufacturing, testing, distributing, selling, inspecting, repairing, marketing, constructing, labeling, and advertising of the Subject Vehicle.

222.   At all times herein mentioned, Defendant had a duty to warn all users of their vehicles of the attendant risks of harm, said risks of harm being at all times known and/or foreseeable to Defendant.

223.   At all times herein mentioned, Defendant knew, or in the exercise of reasonable care should have known, that if the Subject Vehicle was not properly designed, manufactured, tested, distributed, sold, inspected, repaired, marketed, constructed, and labeled, for the use and purpose for which the

Subject Vehicle was intended, the Subject Vehicle was likely to cause injuries to owners, passengers, and users of the Subject Vehicle.

224.   Since the date of purchase, Plaintiff has used the Subject Vehicle in the way it was intended to be used. At that time and prior thereto, Defendant negligently and carelessly manufactured, designed, constructed, equipped, tested, installed, repaired, assembled, maintained, and handled the Subject Vehicle so that it was defective and unsafe when used and operated in the manner for which it was intended.

225.   The Cup Holder Defect existed at the time it left Defendant's control.

226.   As a direct and legal result of the Subject Vehicle's Defect, Plaintiff was injured by the Subject Vehicle while it was being used in the manner for which it was intended, the risk of which was at all times known and foreseeable to Defendant.

227.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages for which relief is sought herein.

**PRAYER**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, and also on behalf of the general public, pray for judgment against all Defendants as follows:

A.   An order certifying the case as a class action and appointing Plaintiff and their counsel to represent the Class;

B.   For actual damages;

C.   For statutory damages in an amount of not less than $1,000 per Plaintiff or Class Member pursuant to California Civil Code § 1780(a)(1);

D.   For restitution as appropriate;

E.   For statutory pre-judgment interest;

F.   For punitive damages in an amount to deter Defendants from similar conduct in the future;

G.   For any additional and consequential damages suffered by Plaintiff and the Class;

H.   For reasonable attorneys' fees and the costs of this action;

I.   For declaratory and/or equitable relief under the causes of action stated herein; and

J.   For such other relief as this Court may deem just and proper.

**PLAINTIFF HEREBY REQUESTS A JURY TRIAL IN THIS MATTER**

Plaintiff demands a trial by jury for himself and the Class on all claims so triable.

DATED: _12/13/2021_                    THE MARGARIAN LAW FIRM
                                       801 N. Brand Blvd., Suite 210
                                       Glendale, CA 91203

                                       By _Hovanes Margarian_
                                       Hovanes Margarian,
                                       Attorney for Plaintiff,
                                       and all others similarly situated.

**DECLARATION OF HOVANES MARGARIAN PURSUANT TO CIVIL CODE § 1780(d)**

I, HOVANES MARGARIAN, declare as follows:

1.     I am an attorney at law duly licensed to practice before all courts of the State of California and am the principal attorney at the Margarian Law Firm, one of the counsels of record for Plaintiff. I have personal knowledge of the matters set forth below and if called upon as a witness could and would competently testify thereto.

2.     I am informed and believe that venue is proper in this court pursuant to Civil Code § 1780(d) based on the following facts:

    a.     Defendant has performed transactions at issue in this action, or has obtained financial benefit from such transactions, at all times relevant to this action, in Los Angeles, California; and

    b.     At all relevant times herein, Plaintiff BRIGHTK CONSULTING INC. was and is a California Corporation located and doing business in Orange County.

WHEREFORE, I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on _12/13/2021_ at Glendale, California.


DATED: _12/13/2021_

                    THE MARGARIAN LAW FIRM
                    801 N. Brand Blvd., Suite 210
                    Glendale, CA 91203

                    DocuSigned by:
                    *Hovanes Margarian*
          By _____349B6A15D3DD443___
                    Hovanes Margarian,
                    Attorney for Plaintiff,
                    and all others similarly situated.

PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES

1
2
3
4
5              **EXHIBIT A**
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES

| Dealer Number | | Contract Number | | P.O.S. Number X | | Stock Number | 403510 |

Buyer Name and Address
(Including County and Zip Code)

Co-Buyer Name and Address
(Including County and Zip Code)

Seller-Creditor (Name and Address)
NEW CENTURY BMW
1139 W MAIN ST
ALHAMBRA CA
91801

You agree to buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on this contract. You agree to pay the Seller – Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-in-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2020 | BMW X7M50i | 68 | 5UXCW2C06L9L51525 | Personal, family or household |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 0.00 % | $ 0.00 | $ 127015.50 | $ 127015.50 | $ 127015.50 |

### STATEMENT OF INSURANCE

### Vehicle Insurance

### YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| 1 | 127015.50 | Monthly beginning 12/28/2019 |
| One final payment | N/A | N/A |

### ITEMIZATION OF THE AMOUNT FINANCED

1. Total Cash Price
   a. Cash Price of Motor Vehicle and Accessories .... $ 113345.00
      Cash Price Accessories ... $ 113345.00
      b. Other (Nontaxable) ... $ N/A
   c. Document Processing Charge (not a governmental fee) ... $ 85.00
   d. Emissions Testing Charge (not a governmental fee) ... $ N/A
   e. (Optional) Theft Deterrent Device(s) ... $ N/A
   f. (Optional) Surface Protection Product(s) ... BMW ALL SURFACE $ 1695.00
   g. EV Charging Station (paid to) ... $ N/A
   h. Sales Tax (on taxable items in a through f) ... $ 8922.50
   i. Electronic Vehicle Registration or Transfer Charge ... $ N/A
      (not a governmental fee) (paid to) NVSE ... $ 30.00
   j. (Optional) Service Contract(s) BMW MAINTENANCE ... $ 1895.00

   Total Cash Price (A through N) ... $ 125980.50

2. Amounts Paid to Public Officials
   a. Vehicle License Fees ... ESTIMATE $ 736.00
   b. Registration/Transfer/Titling Fees ... $ 272.00
   c. California Tire Fees ... $ 7.50
   d. Other ... SMOG ABATEMENT $ 20.00
   Total Official Fees (A through D) ... $ 1035.00

3. Amount Paid to Insurance Companies ... $ N/A
4. State Emissions Certification Fee or State Emissions Exemption Fee ... $ N/A
   Subtotal (1 through 4) ... $ 127015.50
5. Total Downpayment
   a. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)) ... $ 32500.00
   b. Less Prior Credit or Lease Balance (b) ... $ 32500.00
   c. Net Trade-In (a–b) (indicate if a negative number) ... $ 0.00
   d. Deferred Downpayment Payable to Seller ... $ N/A
   e. Manufacturer's Rebate ... $ N/A
   f. Cash ... $ N/A
   g. Other ... $ N/A
   Total Downpayment (F through G) ... $ 0.00
6. Amount Financed (3 less 6) ... $ 127015.50

### Trade-In Vehicle(s)

Vehicle 1
Year 2016 Make TESLA
VIN 5YJSA1E25GF054360
Agreed Value of Property ... $ 32500.00
Buyer/Co-Buyer Retained Trade Equity ... $ N/A
Agreed Value of Property Being Traded-In (a-b) ... $ 32500.00
Prior Credit or Lease Balance ... $ 32500.00
Net Trade-In (a-b) (must be ≥ 0 for buyer/co-buyer to retain equity) ... $ 0.00

Total Agreed Value of Property Being Traded-In (1a+2a) ... $ 32500.00
Total Prior Credit or Lease Balance (1b+2b) ... $ 32500.00
Total Net Trade-In (1e+2e) ... $ 0.00

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED BY LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION

NO ADDITIONAL TERMS TO BE ENTERED IN THIS BOX

Buyer Signature X _____ Date 12/28/19 Co-Buyer Signature X _____ Date

| | | | | |
|---|---|---|---|---|
| 1. (paid to) | N/A | | N/A | (D2) |
| 2. (paid to) | N/A | | N/A | (D3) |
| 3. (paid to) | | $ | | |
| E. (Optional) Surface Protection Product(s) | | $ | 1699.00 | (E1) |
| 1. (paid to) BMW ALL SURFACE | | $ | | (E2) |
| 2. (paid to) | N/A | $ | N/A | (F) |
| F. EV Charging Station (paid to) N/A | | $ | 8922.50 | (G) |
| G. Sales Tax (on taxable items in A through F) | | | | |
| H. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (paid to) MVSC | | $ | 30.00 | (H) |
| I. (Optional) Service Contract(s) | | $ | 1899.00 | (I1) |
| 1. (paid to) BMW MAINTENANCE | | $ | N/A | (I2) |
| 2. (paid to) N/A | | $ | N/A | (I3) |
| 3. (paid to) N/A | | $ | N/A | (I4) |
| 4. (paid to) N/A | | $ | N/A | (I5) |
| 5. (paid to) N/A | | | | |

J. Prior Credit or Lease Balance (e) paid by Seller to
Vehicle 1 N/A _____ Vehicle 2 N/A _____  $ N/A (J)
(see downpayment and trade-in calculation)

| | | | |
|---|---|---|---|
| K. (Optional) Debt Cancellation Agreement | $ | N/A | (K) |
| L. (Optional) Used Vehicle Contract Cancellation Option Agreement | $ | N/A | (L) |
| M. Other (paid to) N/A | $ | N/A | (M) |
| For N/A | | | |
| N. Other (paid to) N/A | $ | N/A | (N) |
| For N/A | | | |
| **Total Cash Price (A through N)** | $ | 125980.50 | (1) |

**2. Amounts Paid to Public Officials** ESTIMATE

| | | | |
|---|---|---|---|
| A. Vehicle License Fees | $ | 736.00 | (A) |
| B. Registration/Transfer/Titling Fees | $ | 272.00 | (B) |
| C. California Tire Fees | $ | 7.00 | (C) |
| D. Other SMOG ABATEMENT | $ | 20.00 | (D) |
| **Total Official Fees (A through D)** | $ | 1035.00 | (2) |

**3. Amount Paid to Insurance Companies**

| | | | |
|---|---|---|---|
| (Total premiums from Statement of Insurance) | $ | N/A | (3) |
| 4. ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee | $ | N/A | (4) |
| **5. Subtotal (1 through 4)** | $ | 127015.50 | (5) |

**6. Total Downpayment**

A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)): $ 32500.00 (A)
Vehicle 1 $ 32500.00 Vehicle 2 $ N/A

B. Total Less Prior Credit or Lease Balance (e) $ 32500.00 (B)
Vehicle 1 $ 32500.00 Vehicle 2 $ N/A

C. Total Net Trade-In (A–B) (indicate if negative number) $ N/A (C)
Vehicle 1 $ N/A Vehicle 2 $ N/A

| | | | |
|---|---|---|---|
| D. Deferred Downpayment Payable to Seller | $ | N/A | (D) |
| E. Manufacturer's Rebate | $ | N/A | (E) |
| F. Other N/A | $ | N/A | (F) |
| G. Cash, Cash Equivalent, Check, Credit Card, or Debit Card | $ | N/A | (G) |
| **Total Downpayment (C through G)** | $ | 0.00 | (6) |

(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J above)

| | | | |
|---|---|---|---|
| **7. Amount Financed (5 less 6)** | $ | 127015.50 | (7) |

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

Buyer Signature X BRIGHTA CONSULTING INC BY: Co-Buyer Signature X N/A

---

| | | | |
|---|---|---|---|
| Term N/A Mos. or N/A Miles | | | |
| I3 Company N/A | | | |
| Term N/A Mos. or N/A Miles | | | |
| I4 Company N/A | | | |
| Term N/A Mos. or N/A Miles | | | |
| I5 Company N/A | | | |
| Term N/A Mos. or N/A Miles | | | |
| Buyer X BRIGHTA CONSULTING INC BY: | | | |

### Trade-In Vehicle(s)

**1. Vehicle 1**

Year 2015 Make TESLA
Model MODEL S Odometer 55444
VIN 5YJSA1S22FF094368

| | | | |
|---|---|---|---|
| a. Agreed Value of Property | $ | 32500.00 | |
| b. Buyer/Co-Buyer Retained Trade Equity | $ | N/A | |
| c. Agreed Value of Property Being Traded-In (a–b) | $ | 32500.00 | |
| d. Prior Credit or Lease Balance | $ | 32500.00 | |
| e. Net Trade-In (c–d) (must be ≥ 0 for buyer/co-buyer to retain equity) | $ | N/A | |

**2. Vehicle 2**

Year N/A Make N/A
Model N/A Odometer N/A
VIN N/A

| | | | |
|---|---|---|---|
| a. Agreed Value of Property | $ | N/A | |
| b. Buyer/Co-Buyer Retained Trade Equity | $ | N/A | |
| c. Agreed Value of Property Being Traded-In (a–b) | $ | 0.00 | |
| d. Prior Credit or Lease Balance | $ | N/A | |
| e. Net Trade-In (c–d) (must be ≥ 0 for buyer/co-buyer to retain equity) | $ | N/A | |

| | | | |
|---|---|---|---|
| **Total Agreed Value of Property Being Traded-In (1c+2c)** | $ | 32500.00 | |
| **Total Prior Credit or Lease Balance (1d+2d)** | $ | 32500.00 | |
| **Total Net Trade-In (1e+2e)** | $ | N/A | |

(*See item 6A–6C in the Itemization of Amount Financed)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before N/A , Year N/A .

SELLER'S INITIALS

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____
Co-Buyer Signs X N/A

---

## AUTO BROKER FEE DISCLOSURE

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: N/A

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in

Buyer X BRIGHTA CONSULTING INC BY: Co-Buyer X

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING: YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE

| | | |
|---|---|---|
| D. Deferred Downpayment Payable to Seller | $ | N/A (E) |
| E. Manufacturer's Rebate | $ | N/A (F) |
| F. Other N/A | $ | N/A (G) |
| G. Cash, Cash Equivalent, Check, Credit Card, or Debit Card | $ | 0.00 (6) |
| Total Downpayment (C through G) | | |
| (If negative, enter zero on line 1J and enter the amount less than zero as a positive number on line 1J above.) | $ | 127015.50 (7) |
| 7. Amount Financed (5 less 6) | | |

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____
Co-Buyer Signs X _____ N/A

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.
Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

Buyer Signature X _BRIGHTK CONSULTING INC BY:_  Co-Buyer Signature X _____ N/A

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked: ☐

THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X _BRIGHTK CONSULTING INC BY:_  Co-Buyer Signs X _____ N/A

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

Buyer X _BRIGHTK CONSULTING INC BY:_  Co-Buyer X _____ N/A

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X _BRIGHTK CONSULTING INC BY:_  X _____ N/A

NO ADDITIONAL TERMS TO BE ENTERED IN THIS BOX

**Notice to buyer:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof. After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _BRIGHTER CONSULTING INC BY:_  Co-Buyer Signature X _____ N/A

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _BRIGHTK CONSULTI_  Date 12/28/19  Co-Buyer Signature X _____ N/A  Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____  Address _____

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing. Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X _____  Date 12/28/19  Guarantor X _____  Date _____
Address _____  Address _____

Seller Signs _NEW CENTURY BMW_  Date 12/28/19  By X _____  Title MGR.

LAW FORM NO. 553-CA-ARB (REV. 7/16)
©2016 The Reynolds and Reynolds Company TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

CUSTOMER/TRUTH IN LENDING COPY

1

2

3

4

5                                **EXHIBIT B**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES

# BMW

## CREVIER
### *Performance Standard*

241762

**1500 AUTO MALL DRIVE** • **SANTA ANA, CA 92705-4741** • **(657) 231-5000** • **SERVICE FAX# (714) 581-6951**
www.crevierbmw.com  **(657) 231-5070**  E-mail: Service@crevierbmw.com

## RECOMMENDED SERVICES   EPA# CA0000207282   BAR# ARD265806

| Operation | Operation Description | MO/MI | Total | Operation | Operation Description | MO/MI | Total |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## SERVICE HISTORY

| DATE | REPAIR ORDER | MILEAGE | ADVISOR | TECHNICIAN | TYPE | OPERATION | OPERATION DESCRIPTION |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| SALESPERSON NO. | S E R V I C E | STATE REG# BAR #265806 |
|---|---|---|

| TERMS | VEHICLE I.D. NO. | YEAR/MAKE/MODEL | PRODUCTION DATE | STOCK NO. | LICENSE NO. | R.O. NO. |
|---|---|---|---|---|---|---|
| CASH ☐ | 5UXCX6C09L9B51525 | 20/BMW SAV/X7/4DR M50I | 11/01/19 | | 8NLA787 | 241762 |
| CREDIT CARD ☐ | FANG LIN | CUSTOMER NO. / SERVICE CONTRACT | DELIVERY DATE | DELIVERY MILES | SELLING DEALER NO. | R.O. DATE |
| CHECK ☐ (PRIOR APPROVAL) | | 302817 | 12/28/19 | | | 04/26/21 |
| OTHER ☐ | COLOR | CONTRACT NO. | EXPIRATION DATE | EXPIRATION MILES | ADVISOR | 9431 |
| PLEASE CHECK THIS BOX TO SAVE OLD PARTS ☐ | TURBO Y  MMC BFZZ  AIR COND. Y  P.S. Y  TRANS A  MILEAGE 7,502  292029 | | | | DAN CAO | |
| | RESIDENCE PHONE | BUSINESS PHONE | I hereby authorize the repair work to be done by you, together with the furnishing by you of the necessary parts and other material for such repair. I agree with the terms and conditions on the front and back sides hereof and I further acknowledge that the employees of the Dealer may operate the above vehicle, including on streets and highways, for testing and/or inspecting my vehicle. | | | |
| APPOINTMENT ☐ Yes ☒ No | TIME RECEIVED 01:42pm | DATE/TIME PROMISED 04/27/21  05:00pm  PRIORITY 7 | X | | | |
| | | | X | | | |

---

| JOB | ORIGINAL CUSTOMER ESTIMATE: | TOTAL 0.00 | NOTE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON REVERSE SIDE |
|---|---|---|---|

X _____

**NOTE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON REVERSE SIDE**

Customer agrees that this Agreement includes all of the terms and conditions on the **front and back side hereof**, that this Agreement cancels and supersedes any prior agreement including any oral agreements and, as of the date above comprises the entire agreement between Customer and Dealer relating to these repairs or other matters referred to on the front or back side of this document.

**1** W **00BFZSTANDARD**   *STANDARD SCOPE*
CONDITION BASE SERVICE VEHICLE/PERFORM STANDARD SCOPE
CHECK "CHECK CONTROL" MESSAGES
RESET CONDITION BASE SERVICE INDICATOR

**2** W **00BFZOS99**   *OIL SVC WMP99*
PERFORM ENGINE OIL SERVICE AS PER MAINTENANCE CHECK LIST

**3** W **51BFZ02**   *INT TRIM CONCERN*
GUEST STATES THE DRIVER'S SUNVISOR LOCKING BAR CAME LOOSE.
CHECK AND ADVISE

**4** W **51BFZ**   *BODY EQUIPMENT*
GUEST STATES THE LEFT REAR DOOR EDGE SEAL CAME LOOSE. CHECK AND ADVISE

**5** W **52BFZ**   *SEATS*
GUEST STATES THE THIRD ROW SEAT LOCK MESSAGE CAME ON INTERMITTENTLY. CHECK AND ADVISE

Customer Signature _____

Customer Initials: _____ I hereby consent to receive e-mails, text messages and autodialed and/or pre-recorded telemarketing calls from or on behalf of the Dealership at the telephone number(s) or e-mail address I provided in this document. I understand that carrier charges may apply and that such consent is not a condition of purchasing or leasing any goods or services from the Dealership.

| REVISED ESTIMATE (1) | DATE | TIME AM PM | REASON | |
|---|---|---|---|---|
| | BY PHONE | IN PERSON | SERVICE ADVISOR | PERSON CONTACTED |
| REVISED ESTIMATE (2) | DATE | TIME AM PM | REASON | |
| | BY PHONE | IN PERSON | SERVICE ADVISOR | PERSON CONTACTED |

**PLEASE SEE IMPORTANT INFORMATION ON BACKER**

1701J241762   CUSTOMER COPY

# BMW

## CREVIER
*Performance Standard*

1500 AUTO MALL DRIVE • SANTA ANA, CA 92705-4741 • (657) 231-5000 • SERVICE FAX# (714) 581-6951
www.crevierbmw.com **(657) 231-5070** E-mail: Service@crevierbmw.com

RECOMMENDED SERVICES    EPA# CA0000207282    BAR# ARD265806

| OPERATION | OPERATION DESCRIPTION | MO/MI | TOTAL | OPERATION | OPERATION DESCRIPTION | MO/MI | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

### SERVICE HISTORY

| DATE | REPAIR ORDER | MILEAGE | ADVISOR | TECHNICIAN | TYPE | OPERATION | OPERATION DESCRIPTION |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## S E R V I C E

SALESPERSON NO.                                                                STATE REG# BAR #265806

| | | | | |
|---|---|---|---|---|
| **TERMS** | VEHICLE I.D NO. **5UXCX6C09L9B51525** | YEAR/MAKE/MODEL **20/BMW SAV/X7/4DR M50I** | PRODUCTION DATE **11/01/19** | STOCK NO. | LICENSE NO. **8NLA787** | R.O. NO. **241762** |

TERMS
CASH
CREDIT CARD
CHECK (PRIOR APPROV)
OTHER

FANG LIN

CUSTOMER NO. **302817**    SERVICE CONTRACT

DELIVERY DATE **12/28/19**    DELIVERY MILES    SELLING DEALER NO.    R.O. DATE **04/26/21**

PLEASE CHECK
THIS BOX TO
SAVE OLD
PARTS

COLOR    CONTRACT NO.    EXPIRATION DATE    EXPIRATION MILES    TAG NO. **9431**

| TURBO **Y** | M/MC **BFZZ** | AIR COND. **Y** | P.S. **Y** | TRANS **A** | MILEAGE **7,502** | ADVISOR NO. **292029** | ADVISOR **DAN CAO** |

RESIDENCE PHONE    BUSINESS PHONE

I hereby authorize the repair work to be done by you, together with the furnishing by you of the necessary parts and other material for such repair. I agree with the terms and conditions on the front and back sides hereof, and I further acknowledge that the employees of the Dealer may operate the above vehicle, including on streets and highways, for testing and/or inspecting my vehicle.

| TIME RECEIVED **01:42pm** | DATE/TIME PROMISED **04/27/21** **05:00pm** | PRIORITY **7** |

APPOINTMENT
☐ Yes
☒ No

CELL

X

---

**NOTE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON REVERSE SIDE**

Customer agrees that this Agreement includes all of the terms and conditions on the **front and back side hereof**, that this Agreement cancels and supersedes any prior agreement including any oral agreements, and as of the date above comprises the entire agreement between Customer and Dealer relating to these repairs or other matters referred to on the front or back side of this document.

**JOB**

**6** I 04BFZLOANER    *LOANER RESERVED*
**LOANER RESERVED**
=================
!!!!!!LOANER RESTRICTION!!!!!!!!
VEHICLE ODOMETER MUST NOT EXCEED 4,500 MILES
$500.00 FEE IF ODOMETER EXCEED 4,500
$1,000.00 FEE IF ODMDOTER EXCEED 5,000

Customer Signature _____

Customer Initials: _____ I hereby consent to receive e-mails, text messages and autodialed and/or pre-recorded telemarketing calls from or on behalf of the Dealership at the telephone number(s) and/or e-mail address I provided in this document. I understand that carrier charges may apply and that such consent is not a condition of purchasing or leasing any goods or services from the Dealership.

**7** I 04BFZWASH    *CAR WASH*
PERFORM COMPLIMENTARY CAR WASH AND VACUUMED

**8** I 00BFZTP    *TIRE PRESSURE*
PERFORM TIRE PRESSURE SERVICE

| REVISED ESTIMATE (1) | | DATE | TIME | AM PM | REASON | |
|---|---|---|---|---|---|---|
| | BY PHONE | IN PERSON | | SERVICE ADVISOR | PERSON CONTACTED | |
| REVISED ESTIMATE (2) | | DATE | TIME | AM PM | REASON | |
| | BY PHONE | IN PERSON | | SERVICE ADVISOR | PERSON CONTACTED | |

**9** I 04BFZONLINEPAY    *ONLINE PAYMENT*
CUSTOMER REQUEST TO SEND COMPLIMENTARY ONLINE PAYMENT OPTION
=================
NOTE: CREDIT CARD USED FOR ONLINE PAYMENT MUST BE PRESENT
WITH THE CARD HOLD'S I.D AT THE TIME OF PICK UP

**PLEASE SEE IMPORTANT INFORMATION ON BACKER**



1701J241762    **CUSTOMER COPY**

241762



BFCS249288

# CREVIER BMW

*"Get Your Motor Running"....*

1500 AUTO MALL DRIVE    SANTA ANA, CA 92705-4741    (657) 231-5070    SERVICE FAX# (714) 581-6951

www.crevierbmw.com    E-mail: Service@crevierbmw.com

CELL#

| CUSTOMER NO. | | ADVISOR | | TAG NO. | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|---|---|
| 302817 | | DAN CAO 292029 | | 9877 | 08/07/21 | BFCS249288 |

1701IBFCS249288

| | LABOR RATE | LICENSE NO. | MILEAGE | COLOR | STOCK NO. |
|---|---|---|---|---|---|
| FANG LIN | | 8NLA787 | 8,338 | | |

| YEAR/MAKE/MODEL | | DELIVERY DATE | DELIVERY MILES |
|---|---|---|---|
| 20/BMW SAV/X7/4DR M50I | | 12/28/19 | |

| VEHICLE I.D. NO. | SELLING DEALER NO. | PRODUCTION DATE |
|---|---|---|
| 5UXCX6C09L9B51525 | | 11/01/19 |

| | P.T.E. NO. | P.O.NO. | R.O. DATE | MO: 8350 |
|---|---|---|---|---|
| | | | 07/08/21 | |

| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS |
|---|---|---|
| | | |

NOTE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON EITHER BACK SIDE OR LAST PAGE HEREOF

Customer agrees that this Agreement includes all of the terms and conditions on the **front and either back side or last page hereof**, that this Agreement cancels and supersedes any prior agreement including oral agreements, and as of the date above comprises the entire agreement between Customer and Dealer relating to these repairs or other matters referred to on the front or back side of this document. Customer also acknowledges receipt of copy of this invoice.

Arbitration Agreement. Customer agrees that Customer or Dealership may elect to resolve any dispute by binding arbitration pursuant to the Arbitration Provision on either the back side or last page of this document.

JOB# 6 CHARGES----------------------------------------

LABOR----------------------------------------- INTERNAL
J# 6+61BFZZ07      ELECTRICAL      TECH(S):259724
Added Operation (204DCAO @ 07/08/2021 13:55)
    GUEST STATES THE DRIVER'S RESTRAINT SYSTEM MALFUNCTION
    MESSAGE CAME ON DISPLAY. CHECK AND ADVISE
    REFER TO LINE 7 FOR REPAIR

JOB# 6 TOTALS-----------------------------------------
              JOB# 6 JOURNAL PREFIX BFCS   JOB# 6 TOTAL      0.00

JOB# 7 CHARGES---------------------------------------- 1575.00

LABOR----------------------------------------- 1575.00
J# 7+62BFZZTRIM2    INT. ELECT CONCERN      TECH(S):259724
Added Operation (204DCAO @ 08/03/2021 17:38)
    VERIFIED CUSTOMERS CONCERN
    OF CHECK CONTROL MESSAGES, CONNECTED BATTERY CHARGER RAN
    SHORT TEST INTERROGATED FAULTS FOUND FAULTS FOR SIDE REAR
    AIR BAG SHORT TO GROUND AND RETRACTOR TENSIONER DRIVER SHORT
    TO GROUND, RAN TEST PLAN FOR SAID FAULTS AND PER TEST PLAN
    CHECKED LINES AND CONNECTIONS TO BOTH, REMOVING REAR RIGHT
    PANELING TO GAIN ACCESS TO AIR BAG, FOUND NO FAULTS AT
    AIRBAG MODULES, PER TEST PLAN TO CHECK LINE ALL THE WAY BACK
    TO CRASH SAFETY MODULE, REMOVED CENTER CONSOLE AND FOUND
    FLUID RESIDUAL ON ACSM CRASH SAFETY MODULE, REMOVED
    CONNECTOR AND FOUND FLUID IN CONNECTOR AND BURNT PINS ON
    MODULE, RECC REPLACEMENT OF ACSM MODULE AND HARNESS REPAIR
    ON BURNT PINS
    REMOVED AND REPLACED ACSM AND PERFORMED HARNESS REPAIR ON
    CLOGGED PINS, PROPERLY REASSEMBLED AND PROGRAMMED ACSM, TEST
    DROVE, VEHICLE IS OPERATING PROPERLY AT THIS TIME

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE | |
|---|---|---|---|---|---|
| | 1 | 65-77-9-890-595 | CONTROL UNIT AIRBAG | 729.67 | 729.67 |
| | 20 | 61-13-1-393-724 | SOCKET TERMINAL MQS | 0.52 | 10.40 |
| | 1 | PKCONNECTOR | | **** | **** |
| | 20 | 61-13-8-353-746 | CABLE CONNECTOR | 3.49 | 69.80 |
| | 20 | 61-13-1-379-833 | SHRINKING HOSE | 5.42 | 108.40 |
| | | | | TOTAL - PARTS | 918.27 |

JOB# 7 TOTALS-----------------------------------------
                                               LABOR       1575.00
                                               PARTS        918.27
             JOB# 7 JOURNAL PREFIX BFCS   JOB# 7 TOTAL    2493.27

ESTIMATE-----------------------------------------
CUSTOMER HEREBY ACKNOWLEDGES RECEIVING
    ORIGINAL ESTIMATE OF   $0.00 (+TAX)
APPROVED ADDITIONAL COST OF $2600.00 FOR TOTAL ESTIMATE OF $2600.00 (+TAX) ON 08/03/21 AT 05:38p
BY FANG LIN        COMMENTS REPLACE ACSM MODULE
CONTACT METHOD: PHONE

BAR# ARD265806 • DEALER#
BMW EPA# CA0000207282

The Reynolds and Reynolds Company
SF663212

| State Farm Insurance Companies |
|---|
| Take this initial estimate to the repair facility of your choice. If |
| additional damage is found have the repair facility use the Request Supplement |
| link at b2b.statefarm.com. **This is not an email address; it is the site to |
| submit a Supplement**. All supplements must be approved by State Farm®. |

| *** ESTIMATE *** |
|---|

08/03/2021 04:43 PM

## Owner

| **Owner:** FANG LIN | | |
|---|---|---|
| **Address:** ██████████ | **Home/Day:** | ██████ |
| | **Cell:** | ██████ |
| **City State Zip:** ████████████ | **Home/Evening:** | ██████ |

## Control Information

| **Claim #:** 75-22Q8-02K01 | **Insured Policy #:** |
|---|---|
| **Loss Date/Time:** 07/04/2021 05:00 AM | **Loss Type:** Comprehensive |
| **Deductible:** $1,000.00 | |
| **Ins. Company:** State Farm | |
| **Insured:** FANG LIN | |
| **Address:** | **Home/Day:** ████ |
| | **Cell:** ████ |
| **City State Zip:** | **Home/Evening:** ████ |
| **Claim Rep:** Express Team U | |
| **Address:** | **Work/Day:** ████ |

## Inspection

| **Inspection Date:** 08/03/2021 04:42 PM | **Inspection Type:** Field |
|---|---|
| **Inspection Location:** Crevier BMW | **Contact:** |
| **Address:** 1500 Auto Mall Drive | **Home/Day:** (657)213-3493 |
| **City State Zip:** Santa Ana, CA 92705 | |
| **Primary Impact:** Non-Collision | **Secondary Impact:** |
| **Driveable:** No | **Rental Assisted:** |
| **Assigned Date/Time:** | **Received Date/Time:** 07/30/2021 04:06 PM |
| **First Contact Date/Time:** | **Appointment Date/Time:** 08/02/2021 02:18 PM |
| **Appraiser Name:** Kevin (YR5R) | **Appraiser License #:** |

## Repairer

| **Repairer:** Crevier BMW | **Contact:** |
|---|---|
| **Address:** 1500 Auto Mall Dr | **Home/Day:** (657)231-5000 |
| **City State Zip:** Santa Ana, CA 92705 | |
| **Email:** Cao,Dan <DCao@penskeautomotive.com> | |

## Vehicle

2020 BMW X7 M50i 4 DR Wagon
8cyl Gasoline Turbo 4.4

2020 BMW X7 M50i 4 DR Wagon
Claim # :  75-22Q8-02K01

08/03/2021 04:43 PM

Automatic Sport Trans

| | |
|---|---|
| **Lic.Plate:** 8NLA787 | **Lic State:** CA |
| **Lic Expire:** 01/2022 | **VIN:** 5UXCX6C09L9B51525 |
| **Prod Date:** 11/2019 | **Mileage:** 8,338 |
| **Veh Insp#** : | **Mileage Type:** Actual |
| **Condition:** | **Code:** 47454B |
| **Ext. Color:** MINERAL WHITE PRL | **Int. Color:** BMW INDI. ERW. LED. Black |
| **Ext. Refinish:** Three-Stage User Defined | **Int. Refinish:** Two-Stage |
| **Ext. Paint Code:** A96 | **Int. Trim Code:** VASW |

## Options  - *AudaVIN Information Received*

| | | |
|---|---|---|
| 1st Row LCD Monitor(s) | 2nd Row Head Airbags | 3rd Row Fixed Sunroof |
| AM/FM Stereo | *Active Blind Zone Assist* | *Adaptive Cruise Control* |
| Adaptive Headlights | Aluminum/Alloy Wheels | Amplifier |
| Anti-Lock Brakes | *Armrest(s)* | *Assisted Driving Vehicle* |
| Auto Adjust Suspension | Auto Dimming Ext Mirrors | Automatic Dimming Mirror |
| Automatic High Beam | Automatic Power Locks | Auxiliary Audio Input |
| Blind Spot Sensor | Carpeting | Center Console |
| *Collision Avoidance Sys* | *Corrective Lane Assist* | Cross Traffic Alert |
| Cruise Control | Daytime Running Lights | Digital Clock |
| Digital Signal Processor | Dual Air Conditioning | Dual Airbags |
| Dual Exhaust System | Dual Panel Moonroof | Dual Power Seats |
| Dual Pwr Lumbar Supports | Dual Zone Auto A/C | Elect. Stability Control |
| Electric Parking Brake | Emergency S.O.S. System | Engine Stop/Start |
| Ext Mirror Turn Signals | Floor Mats | Fog Lights |
| *Fwd. Collision Alert* | Garage Door Opener | Harman Kardon Sound Sys |
| Head Airbags | *Heads-Up Display* | *Heated Frnt & Rear Seats* |
| Heated Power Mirrors | *Heated Steering Wheel* | Heated W/S Wiper Washers |
| Illuminated Visor Mirror | In-Vehicle WiFi | Intelligent Parking Asst |
| Keyless Entry System | Keyless Ignition System | Knee Air Bags |
| LED Brakelights | Laminated Glass | *Lane Departure Alert* |
| Laser Headlamps | *Leather Seats* | Leather Shift Knob |
| Leather Steering Wheel | Lighted Entry System | Limited Slp Differential |
| Manual Locking Hubs | *Massaging Seat(s)* | Memory Seats |
| Mirror(s) Memory | Navigation System | Parking Assist System |
| Perimeter Alarm System | Power Door Locks | Power Liftgate |
| Power Rear Sunshade | Power Rear Window | Power Steering |
| Power Windows | Privacy Glass | Pwr 2nd Row Bench Seat |
| Pwr Accessory Outlet(s) | Pwr Fold 3rd Row Seat(s) | Pwr Folding Ext Mirrors |
| Pwr Tilt/Tele. Str Wheel | Rain-Sensing W/S Wipers | Rear Lip Spoiler |
| Rear Window Defroster | Roof Rails | *Secnd Row Captain Chairs* |
| Side Airbags | *Side Blind Zone Warning* | SiriusXM Satellite Radio |
| Smokers Package | Stability Cntrl Suspensn | *Stop & Go System* |
| Strg Wheel Radio Control | Surround Cameras | Theft Deterrent System |
| Tilt Steering Wheel | Tire Pressure Monitor | Tonneau/Cargo Cover |
| Traction Control System | *Trailer Hitch* | Trip Computer |
| *Ventilated Front Seat(s)* | Voice Activatd Cellphone | Wireless Phone Connect |
| Wood Interior Trim | | |

*AudaVIN options are listed in bold-italic fonts*

## Damages

| Line | Op | Guide | MC | Description | MFR.Part No. | Price | ADJ% | B% | Hours | R |
|---|---|---|---|---|---|---|---|---|---|---|
| **Center Console And Seat Tracks** | | | | | | | | | | |
| 1 | RI | 1966 | | Lever,Gear Shift | R & I Assembly | | | | 0.2 | ME |
| 2 | E | 1959 | | Module,Airbag Control | 65779890595 | $766.46 | | | 1.0 | ME |
| 3 | RI | 907 | | Armrest | R & I Assembly | | | | INC | SM |

2020 BMW X7 M50i 4 DR Wagon
Claim # : 75-22Q8-02K01

08/03/2021 04:43 PM

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 4 | RI | 1688 | Bezel,Console | R & I Assembly | | | INC | SM |

**Manual Entries**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5 | N | | Pre Scan | ADDITIONAL OPERATION | | | 0.5* | ME* |
| 6 | N | | Post Scan | ADDITIONAL OPERATION | | | 0.5* | ME* |
| 7 | E | | Connectors | REPLACE OEM | $63.40* | | | SM* |
| | | | Quantity of 20 @ $3.17* each | | | | | |
| | | | >> 61131393724 | | | | | |
| 8 | E | | Shrink Tube | REPLACE OEM | $108.40* | | | SM* |
| | | | Quantity of 20 @ $5.42* each | | | | | |
| | | | >> 61131379833 | | | | | |
| 9 | N | | R&R Corroded Pin Connector | ADDITIONAL OPERATION | | | 5.3* | ME* |
| | **9** | **Items** | | | | | | |

---

### Estimate Total & Entries

| | | | | | |
|---|---|---|---|---|---|
| **OEM Parts** | | | | $938.26 | |
| **Parts & Material Total** | | | | | $938.26 |
| **Tax on Parts & Material** | | @   9.250% | | | $86.79 |

| Labor | Rate | Replace Hrs | Repair Hrs | Total Hrs | |
|---|---|---|---|---|---|
| **Sheet Metal (SM)** | $55.00 | | | | |
| **Mech/Elec (ME)** | $210.00 | 1.2 | 6.3 | 7.5 | $1,575.00 |
| **Frame (FR)** | $90.00 | | | | |
| **Refinish (RF)** | $55.00 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Labor Total** | | | | 7.5 Hours | $1,575.00 |
| **Gross Total** | | | | | **$2,600.05** |
|   **Less: Deductible** | | | | | $1,000.00- |
| **Net Total** | | | | | **$1,600.05** |

Register online to check the status of your claim and stay connected with State Farm®. To register, go to statefarm.com and select Check the Status of a Claim. If you are already registered, thank you!

Alternate Parts Y/00/00/00/00/00 Cumulative 00/00/00/00/00/00 Zip Code: 40209 PXN Region 7
Recycled Parts NOT APPLICABLE
Rate Name (02592) CA Div Anahiem Santa Ana Ir

**Audatex Estimating 8.0.911 Update 5 ES 08/03/2021 05:10 PM REL 8.0.911 Update 5 DT 07/01/2021**
**State Disclosure:** CA
**Department of Insurance Disclosure:** CA
**© 2021 Audatex North America, Inc.**

FOR YOUR PROTECTION CALIFORNIA LAW REQUIRES THE FOLLOWING TO APPEAR ON THIS
FORM:
ANY PERSON WHO KNOWINGLY PRESENTS FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT
OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN
STATE PRISON.   FALSE REPRESENTATIONS MADE ON A SIGNED AUTO THEFT CLAIM FORM

SUBJECTS THE INSURED TO A PENALTY OF PERJURY.

**Op Codes**

| | | |
|---|---|---|
| * = User-Entered Value | ^ = Labor Matches System Assigned Rates | E = REPLACE OEM |
| NG = Replace NAGS | EC = ** NON-OEM PART | OE = REPLACE OEM |
| UE = REPLACE OEM | ET = Partial Replace Labor | EP = ** NON-OEM PART |
| EU = RECYCLED PART | TE = NEW PART | PM = REMAN/REBUILT PART |
| UM = REMAN/REBUILT PART | L = Refinish | PC = RECOND PART |
| UC = RECOND PART | TT = Two-Tone | SB = Sublet Repair |
| N = ADDITIONAL OPERATION | BR = Blend Refinish | I = Repair |
| IT = Partial Repair | CG = Chipguard | RI = R & I Assembly |
| P = Check | RP = RP-RELATED PRIOR | |



This report contains proprietary information of Audatex and may not be disclosed to any third party (other than the insured, claimant and others on a need to know basis in order to effectuate the claims process) without Audatex's prior written consent.

**© 2021 Audatex North America, Inc.**
AUDATEX is a trademark owned by Audatex North America, Inc. All rights reserved.

1
2
3
4
5                                    **EXHIBIT C**
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES

DocuSign Envelope ID: 58A10DC8-2077-40C8-AB58-70B1ABD75F5B



# THE MARGARIAN LAW FIRM

801 N. Brand Blvd., Suite 210 | Glendale, CA 91203
Main 818.553.1000 | Fax 818.553.1005

September 23, 2021

### VIA CERTIFIED U.S. MAIL, RETURN RECEIPT REQUESTED

BMW of North America, LLC
Customer Relations
300 Chestnut Ridge Road
Woodcliff Lake, NJ 07677-7731
Tracking No. 7020 1810 0000 5996 1719
2nd copy via U.S. mail

|  |  |
|---|---|
| **Re:** | ***Fang Lin, on behalf of Brightk Consulting, Inc., individually and on behalf of the putative class v. BMW of North America, LLC*** |
| *Vehicle:* | *2020 BMW X7M50I* |
| *VIN:* | *5UXCX6C09L9B51525* |
| *Our file:* | *CA210907-2383* |

### NOTICE OF VIOLATION OF THE
### CALIFORNIA CONSUMER LEGAL REMEDIES ACT.
### CALIFORNIA CIVIL CODE § 1750 et seq.

To Whom It May Concern:

Please be advised that this office represents Fang Lin, on behalf of Brightk Consulting, Inc., all others similarly situated, and the general public, regarding claims against BMW of North America, LLC (hereinafter "BMW NA"). Please direct all future contracts and correspondences regarding this matter to our office.

On or about December 28, 2019, Ms. Lin purchased a 2020 BMW X7M50I bearing the Vehicle Identification Number 5UXCX6C09L9B51525 (hereinafter referred to as the "Subject Vehicle"). The Subject Vehicle is equipped with defective factory-installed BMW Cup Holders (hereinafter referred to as the "Cup Holders").

1



# THE MARGARIAN LAW FIRM

801 N. Brand Blvd., Suite 210 | Glendale, CA 91203
Main 818.553.1000 | Fax 818.553.1005

This letter is written on behalf of Ms. Lin and all other current and former BMW vehicle owners and lessees with defective Cup Holders utilized in numerous BMW vehicles sold in the United States, including but not limited to: the 2020 X7M50I (collectively, the "Class Vehicles"). Note that the investigation is still ongoing, and the Class might consist of more vehicles after conducting discovery.

The Subject Vehicle and Class Vehicles had the defect at the time of their initial retail sales and leasing, and at all times thereafter. The Subject Vehicle as well as the Class Vehicles are manufactured with a defective Cup Holders design which causes liquid to leak through the Cup Holders and onto the wiring for the SRS Air Bag Control Module (which is foolishly situated right under the Cup Holders), resulting in a dangerous non-conformity. It is undisputed that every consumer who has purchased or leased a Class Vehicle in the United States equipped with Cup Holders has paid substantial consideration for the purchase of the Class Vehicle.

In addition to our client, various other consumers who have leased or purchased Class Vehicles report that the Cup Holders in their vehicles are defective. These reports demonstrate that the defect is manifested in several ways, including, but not limited to: (1) the weakening of a paper cup with liquid sitting in the Cup Holders; (2) liquid splashing out of a cup sitting in the Cup Holders; (3) condensation from a cup filled with cold liquid sitting in the Cup Holders leaks down the cup into the Cup Holders; and (4) washing the Cup Holders with a liquid spray. It is undisputed that Cup Holders are designed to hold cups filled with liquid. The Cup Holders fail to meet this basic function.

Aside from the Cup Holders being defective in that liquid should not seep through the Cup Holders, the SRS Air Bag Control Module is foolishly situated directly underneath the Cup Holders. Thus, the defective Cup Holders causes damage to the wiring for the SRS Air Bag Control Module. When liquid seeps through the Cup Holders, the wires for the air bags get wet and end up malfunctioning. As a result, the air bags may inadvertently deploy. Storing electrical wires under a Cup Holders that will inevitably hold liquid is illogical. BMW should not have stored wires under the Cup Holders where people put their drinks.

Some excerpts from online comments report:

1. *I'm having a big issue with BMW right now. My fiancé has a 2019 BMW X7, (still under factory warranty) which gave her a restraint system failure notification this past Saturday. We take the car to the dealer on Monday and get a loaner. They diagnose the issue and figure out that the SRS control module has gone bad and they need to order a new one. They call her Wednesday to tell her that the part arrived, but that it'll be a $2200 repair since liquid was spilled into the SRS control module. NOTE: Some liquid had spilled, but it wasn't a lot (like 1-2 ounces). A fast food cup sat in the Cup Holders for 12ish hours and some soda leaked out the bottom. Not even 1/4 of the cup - a very little amount. With the dealer's help, we escalate the issue to BMW corporate asking for them to help cover since it's a clear design flaw that a liquid sensitive control*



# THE MARGARIAN LAW FIRM

801 N. Brand Blvd., Suite 210 | Glendale, CA 91203
Main 818.553.1000 | Fax 818.553.1005

*module is sitting directly underneath a Cup Holders, where beverages are designed to go. BMW corporate denies, and the dealer is asking us to cover the $2400 bill. (May 17, 2021)*

2. *Placed a soft drink in Cup Holders of a 2020 BMW X7. The lid was not on well and some of the soda spilled onto the gearshift center console. Not much, the cup did not come out of the Cup Holders or anything like that just some spilled as driving....the soda was still 95% full in the cup. But...car goes into emergency stop in the left lane of highway and unable to drive. Goes into Park and won't shift into drive or reverse and dash says bring to dealer immediately. Car gets towed to BMW and tech tells me the liquid damaged a part under the gear shift...cost to fix $2900.00 and not covered by warranty. (March, 2021)*

3. *Driving my vehicle and on my screen popped up driver seat restraint malfunction, also rear seat restraint malfunction please go to closest dealership. I bring my vehicle to BMW dealership in my town and rep calls me and advise that the Cup Holders sit above the SRS wiring and that liquid gets through the Cup Holders and dripped on to the wires causing them to no longer work. This is a design flaw I have never spilled a drink in my Cup Holders and even if someone did on accident why is the airbag wires not covered in plastic if going below Cup Holders that leak any type of liquid. I am unable to afford, I do have warranty however BMW stating that this is an outside interference and will not be covered under warranty, so I am having to drive with no airbags. I researched and many others are having same issue with this same year and make different models. This is something that definitely needs to be recalled as it is a design flaw and a safety hazard. (2019 BMW X5)*

The consumer complaints demonstrate by themselves that owners/lessors of Class Vehicles are not informed that the Cup Holders in the Class Vehicles cannot be used to hold liquid beverages because the liquid from the drinks will inevitably seep through the Cup Holders and damage the SRS Air Bag Control Module. The owners/lessors of Class Vehicles do not find out about such defects until after they are damaged by the defective condition.

As shown by the above referenced complaints, the non-disclosure by BMW of the defective conditions of its Cup Holders clearly constitutes a nuisance for which civil and injective remedies are available. More specifically:

        a.  BMW permitted and continues to permit, by distributing and selling vehicles with defective Cup Holders, a condition to exit that is offensive to the senses of the owners and an obstruction to the free use of the Class Vehicles, so as to interfere with the comfortable enjoyment of their vehicles;

        b.  The condition interfered and continues to interfere with the use and enjoyment of Class Vehicles by their owners and lessors;



# THE MARGARIAN LAW FIRM

801 N. Brand Blvd., Suite 210 | Glendale, CA 91203
Main 818.553.1000 | Fax 818.553.1005

c. Our client and the remaining Class Members did not consent to the defective condition for the simple reason that the defective condition was never properly disclosed to them;

d. An ordinary person would be reasonably annoyed or disturbed by the Cup Holders in their vehicle leaking liquid and damaging the air bags' wires;

e. All Class Members that have the Cup Holders have been harmed, regardless of whether they complained of the leakage to BMW authorized dealerships or not;

f. The seriousness of the harm outweighs the public benefit of BMW's conduct, since a simple disclosure of the leaky Cup Holders by BMW would have been enough to allow prospective buyers and lessors to make an informed decision.

Additionally, in transactions intended to result in the sales/leases of the Class Vehicles to consumers, which did in fact result in the sales and leasing of the same to consumers, BMW and all of its authorized dealerships violated the CLRA, by doing the following:

a. In violation of Civil Code § 1170 (a) (5), BMW represented that the vehicles have characteristics and benefits that they do not have, as described herein;

b. In violation of Civil Code §1170 (a) (7), BMW represented that the vehicles are of a particular standard, quality, or grade when they are not, as described herein;

c. In violation of Civil Code §1170 (a) (9), BMW without an intent to sell them as advertised, as described herein;

d. In violation of Civil Code §1170 (a) (14), BMW misrepresented that a transaction confers or involves legal rights, obligation, or remedies of consumers when it does not;

e. In violation of Civil Code §1170 (a) (18), BMW represented that the vehicles were supplied in accordance with pervious representation when they were not;

f. In violation of Civil Code §1170 (a) (19), BMW unlawfully inserted an unconscionable provision in the contract to purchase or lease the Class Vehicles by inserting into such contract provisions which purport to cause the repair or a retrofit of an inherent defect, even though the provisions do not contain a clear statement and consent to such a waiver.

The representations and advertisements included statements that the vehicles were or would be free from defects when sold or leased, that they were safe, that their safety and quality were much better than those of other vehicles, and that they were built to exceptional standards.

Furthermore, both the Federal Magnuson-Moss Federal Warranty Act, 15 U.S.C. § 2301, et seq., and the Song-Beverly Consumer Warranty Act also known as the "Lemon Law") provide important protections for aggrieved consumers. By example, California Civil Code § 1790, et seq., provides:

If the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the

DocuSign Envelope ID: 58A10DC8-2977-40C8-AB58-70D1ABD75F5B



# THE MARGARIAN LAW FIRM

801 N. Brand Blvd., Suite 210 | Glendale, CA 91203
Main 818.553.1000 | Fax 818.553.1005

manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price…(CA Civ. Code § 1793. 2(d)(1)).

What constitutes a "reasonable number of attempts" is a question of fact and must be determined on a case by case basis. Both the Magnuson-Moss federal Warranty Act and the Song-Beverly Consumer Warranty Act also provide remedies for a violation of the manufacturer's duty to repurchase a defective consumer product, including a civil penalty and payment of consumer's reasonable attorney's fees and costs based on actual time expended.

Moreover, BMW and its authorized dealerships violated the CA Business and Professions Codes 17200 and 17500, both through the above-outlined violations and by:

a) Falsely representing, concealing, and /or failing to disclose to Class Members that the Cup Holders in the Class Vehicles are defective in that liquid leaks through the Cup Holders and damages the air bags' wires which are stored below the Cup Holders;

b) Falsely advising Class Members that the non-conformities exhibited by the vehicles are in fact normal and do not constitute a defect; and

c) Actively engaging in a custom and practice of encouraging the failure to and/or failing to document complaints by Class Members regarding the non-conformities exhibited by the Class Vehicles.

## CLRA Demand on Behalf of the Class

Given the forgoing, demand is hereby made as follows:

1. That BMW repair and correct the defective condition, that the work include correction of the Cup Holders;

2. That the BMW conduct tests of the Class Vehicles sufficient to assure that the Cup Holders leaking issue has truly been corrected;

3. That the repairs and corrections be performed for all members of the Class, whether or not they have complained of the foregoing nonconformities;

4. That BMW do these things in such a way that the owners and lessees of these vehicles bear no charge or expenses;

5. That BMW reimburse the members of the Class for expenses they have incurred because of the defective condition, including but not limited to expense of repairs, inspections, and replacement parts;

6. That BMW pay the members of the Class the difference between what their vehicles were and are worth free of the defective condition, and what they were and are worth with the existence of the condition, including those members who have since sold or otherwise disposed of their vehicles;

7. That BMW pay the members of the Class all other damages, restitution, and losses caused by the defective condition; and

5



# THE MARGARIAN LAW FIRM

801 N. Brand Blvd., Suite 210 | Glendale, CA 91203
Main 818.553.1000 | Fax 818.553.1005

8. The BMW offer all remedies to members of the Class pursuant to the Federal Magnuson-Moss Federal Warranty Act, 15 U.S.C. § 2301, et seq. and the Song-Beverly Consumer warranty Act.

9. That BMW disclose the condition of the Cup Holders in all vehicles before making, selling, or leasing them to consumers.

The above outlined violations must be cured within 30 days of receipt of this notice of violations. Failure to do so will leave us with no choice but to proceed with litigation. Thank you for your attention to this matter.

Very truly yours,

Hovanes Margarian
Attorney at Law

6