1  Hovanes Margarian, SBN 246359
   hovanes@margarianlaw.com
2  Armen Margarian, SBN 313775
   armen@margarianlaw.com
3  Shushanik Margarian, SBN 318617
   shushanik@margarianlaw.com
4  THE MARGARIAN LAW FIRM
   801 North Brand Boulevard, Suite 210
5  Glendale, California 91203
   Telephone Number: (818) 553-1000
6  Facsimile Number: (818) 553-1005

7  Attorneys for Plaintiff
   BRIGHTK CONSULTING INC.

8

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13  BRIGHTK CONSULTING INC., as a          | Case No.: 8:21-cv-02063-CJC (JDEx)
    California Corporation, on behalf of itself,
14  all others similarly situated, and the general  | **PLAINTIFF BRIGHTK**
15  public,                                  | **CONSULTING INC.'S NOTICE OF**
                                             | **MOTION AND MOTION FOR**
16          Plaintiff,                       | **FINAL APPROVAL OF CLASS**
                                             | **SETTLEMENT**
17
    vs.                                      | Date: September 11, 2023
18                                           | Time: 1:30 p.m.
    BMW OF NORTH AMERICA, LLC, a             | District Judge: Honorable Cormac J.
19  Delaware Limited Liability Company; and   | Carney
20  DOES 1 through 10, inclusive,            | Magistrate Judge: Honorable John D.
                                             | Early
21                                           | Courthouse: Ronald Reagan Building
          Defendants.                        | and United States Courthouse, 411 West
22                                           | 4th Street, Santa Ana, CA 92701-4516
                                             | Courtroom: 9B
23
                                             | Complaint Filed: December 16, 2021
24

25

26  ///

27  ///

28  ///

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that on September 11, 2023, at 1:30 p.m., or as soon thereafter as the matter can be heard, in Courtroom 9 B of the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, CA 92701, Plaintiff BRIGHTK CONSULTING INC. ("Plaintiff"), by and through its attorneys of record, on behalf of itself all others similarly situated, will, and hereby does, move this Court to enter an order and judgment granting final approval of the settlement described in the Class Action Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of Hovanes Margarian.

This Motion is based upon: (1) this Notice of Motion and Motion for Final Approval of Class Action Settlement; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Hovanes Margarian and exhibits thereto which include, the Settlement Agreement, the Declaration of Lee M. Bowron, and the Declaration of Jed D. Melnick of JAMS; (4) the Declaration of Fang Lin; (5) the Declaration of Meredith Schank Re: Warranty Claims; (6) [Proposed] Order Granting Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing on this Motion.

DATED: August 21, 2023

THE MARGARIAN LAW FIRM
801 North Brand Boulevard, Suite 210
Glendale, California 91203

By: */s/ Hovanes Margarian*
Hovanes Margarian
Attorney for Plaintiff
BRIGHTK CONSULTING INC.

# TABLE OF CONTENTS

**I.     INTRODUCTION** ------------------------------------------------------------ **6**

**II.    SUMMARY OF THE MATERIAL SETTLEMENT TERMS** ---------------- **7**

**III.   STATEMENT OF FACTS** ---------------------------------------------------- **10**

    *A.    Overview of the Litigation*---------------------------------------------- *10*

    *B.    Plaintiff's Investigation and Discovery*-------------------------------- *12*

**IV.   ARGUMENTS** ----------------------------------------------------------------- **20**

    *A.    The Court Should Certify the Class*------------------------------------ *20*

    *B.    The Court Should Finally Approve the Settlement*------------------------- *25*

    *C.    Service Award of $3,000.00 for the Class Representative is Appropriate* ---- *30*

    *D.    Notice of Proposed Settlement*-------------------------------------------- *32*

**V.    CONCLUSION** ------------------------------------------------------------------ **32**

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

1

## Table of Authorities

2

<u>Cases</u>

3  *Amchem Prods. v. Windsor,* 521 U.S. 591, 597 .................................................... 22, 26

4  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007).......................................... 23

5  *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006).......................................... 26

6  *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) .............................................. 31

7  *Bluetooth, 654 F.3d at 942–43* ................................................................................. 19

8  *Bowdle v. King's Seafood Co., LLC,* 2022 U.S. Dist. LEXIS 240383, *25 ............... 17

9  *Briseno v. ConAgra Foods, Inc.*, 998 F.3d 1014, 1022 (9th Cir. 2021)." (Dkt. 35, p. 15)

10  ............................................................................................................................... 28

11  *Byrne v. Santa Barbara Hosp. Serv., Inc.*, 2017 WL 5035366, at *8 (C.D. Cal. Oct. 30,

12  2017) ......................................................................................................................... 13

13  *Calloway v. Cash Am. Net of Cal. LLC*, No. 09-CV-04858 RS, 2011 U.S. Dist. LEXIS

14  41098, 2011 WL 1467356, at *2 (N.D. Cal. Apr. 12, 2011).................................. 15

15  *Carriuolo v. GM Co*., 823 F.3d 977 ......................................................................... 24

16  *Cox v. American Cast Iron Pipe*, 784 F.2d 1546, 1557 (11th Cir. 1986) .................. 20

17  *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 U.S. Dist.

18  LEXIS 14301, 2014 WL 4390006, at *10 (C.D. Cal. Jan. 30, 2014) .............. 15, 31

19  *Ellis,* 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp*, 150 F.3d, 1011, 1020 (9th Cir.

20  1998) ......................................................................................................................... 22

21  *Extreme Networks,* 2019 WL 3290770, at *8............................................................ 27

22  *Faigman v. AT&T Mobility LLC*, No. C06- 04622 MHP, at *8 (N.D. Cal. Feb. 16, 2011)

23  ............................................................................................................................... 31

24  *Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, at *31 (C.D. Cal. Apr. 9,

25  2014) ......................................................................................................................... 21

26  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) ................................... 25

27  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)............. 21, 23, 26, 27

28  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ....................... 13

Case No. 21-cv-02063-CJC (JDEx)
PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

*In re Ominivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ........... 27

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 .................................. 28, 30

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) .. 30

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ...................... 30

*Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017)................................. 21

*Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 545 (C.D. Cal. 2012) ................. 23

*Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015) .......... 22

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602– 03 (C.D. Cal.
    2015) ......................................................................................................................... 21

*Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982), ............................................ 26

*Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989)*........... 19

*Roberts v. Electrolux Home Prods., Inc.,* No. SACV12-1644-CAS(VBKx), 2014 U.S.
    Dist. LEXIS 130163, 2014 WL 4568632, at *14 (C.D. Cal. Sept. 11, 2014)......... 15

*Ronald Chintz et al. v. Intero Real Estate Services*, 2022 WL 16528137, at *6 (N.D.
    Cal. Oct. 28, 2022)................................................................................................... 28

*Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 541 (S.D. Fla. 2015) ............ 24

*Schuchardt v. Law Office of Rory W. Clark*, 2016 U.S. Dist. LEXIS 6741 ............... 15

*Shames v. Hertz Corp.*, 2012 WL 5392159, at *14 (S.D. Cal. Nov. 5, 2012) ........... 16

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) .............................. 23

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473–74 (C.D. Cal. 2012) ...... 21

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) ..................... 26

*Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1260.................................................... 24

*Veilleux v. Elec. Me., LLC*, No. 1:16-cv-571-LEW, at *5 (D. Me. Nov. 9, 2020)...... 31

*Victorino v. FCA United States LLC*, 2023 U.S. Dist. LEXIS 79386, *24-25 ........... 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)........................................ 21

Statutes

Fed. R. Civ. P. 23(a)(1)................................................................................................ 20

Fed. R. Civ. P. 23(a)(4)................................................................................................ 22

Case No. 21-cv-02063-CJC (JDEx)

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

Fed. R. Civ. P. 23(b)(3) ................................................................ 22, 24, 25

Fed. R. Civ. P. 23(c)(2)(B ..................................................................... 32

Fed. R. Civ. P. 23(e)(2) ........................................................................ 25

Fed. R. Civ. P. 23(e)(2)(A) ................................................................... 26

Fed. R. Civ. P. 23(a) ............................................................................ 25

Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................... 27

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff BRIGHTK CONSULTING INC. ("Plaintiff" or "Class Representative"), on behalf of itself and on behalf of a preliminarily certified Settlement Class of current and former owners and lessees of who experienced defects with the front console cupholders contained in 2019-2022 BMW X5 (G05; start of production ("SOP") 11/2018), 2020-2022 X6 (G06; SOP 11/2019), 2019-2022 X7 (G07; SOP 3/2018), 2020-2022 X5M (F95; SOP 4/2020), 2020-2022 X6M (F96; SOP 4/2020) vehicles (individually referred to as "Class Vehicle," collectively referred to as "Class Vehicles"), respectfully moves this Court for entry of an order granting final approval to the settlement memorialized in the Settlement Agreement and Release executed on September 29, 2022 ("Settlement Agreement" or "SA"), that, subject to the Court's approval, will resolve this class action lawsuit.

The Court granted the preliminary approval of class action settlement and conditional certification of settlement class the settlement on January 3, 2023. (Dkt. 35[1]) The Court in its Order preliminarily concluded "that the Settlement is 'fair, reasonable, and accurate,'" and noted that at the final approval stage it would require a fuller showing on the issues it identified in the Order. (Dkt. 35, p. 21) Notice was issued to the preliminarily certified Settlement Class as directed by the Court in the Order.

This settlement—which makes available to every Settlement Class Member extended warranty period as well as compensation for out-of-pocket costs —represents an excellent resolution of this high risk, complex litigation. The parties of this action also worked diligently and cooperatively to deliver the best Notice practicable to the Settlement Class. It is beyond credible dispute that the Class Action Settlement is a fair, adequate, and reasonable resolution for the potential "cupholder liquid spilling" claims

---

[1] Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Conditional Certification of Settlement Class [Dkt. 31] ("Order")

Case No. 21-cv-02063-CJC (JDEx)
PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

1  that are the basis for this lawsuit.

2      In short, the Settlement, with over $2.42-$4.72 million in total reimbursement

3  claims and forecasted future warranty extension benefits, is abundantly fair, reasonable,

4  and adequate. This is made evident by the Class Members' extraordinarily positive

5  response which, for a class that includes 295,817 Class Members, has produced a mere

6  eight (8) requests for exclusion from the settlement and no Class Member has filed an

7  objection. (Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC

8  Re: Class Notice and Claims Received ("Kroll Decl."), p. 3) Accordingly, the Parties

9  respectfully request that the Court enter an order granting final approval of the

10  Settlement and issue a judgment reflecting the same.

11      Plaintiff, therefore, now moves this Court for the final approval of the Settlement

12  Agreement that secures significant benefits for the Class without the delay and risks

13  associated with trial and potential appeals.

14  **II.    SUMMARY OF THE MATERIAL SETTLEMENT TERMS**

15      The Settlement confers significant and practical benefits to Settlement Class of

16  current and former owners and lessees of who experienced defects with the front

17  console cupholders contained in the Class Vehicles purchased or leased in the United

18  States, including the District of Columbia and Puerto Rico who did not exclude

19  themselves from (opt-out of) the class. The principal terms of the Settlement Agreement

20  are as follows:

21      **The Settlement Class.** "Settlement Class" means all current and former owners

22  and lessees of a Class Vehicles acquired in the United States, including the District of

23  Columbia and Puerto Rico who do not exclude themselves from (opt-out of) the class.

24  Exclusions from the Settlement Class include BMW of North America, LLC

25  ("Defendant" or "BMW NA")[2] and its related entities and individuals; issuers of

26   

27      [2] The terms "Plaintiff" and "Defendant" are collectively referred to as the

28  "Parties."

Case No. 21-cv-02063-CJC (JDEx)

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

extended warranties; Class Counsel and his employees; consumers or businesses that have purchased Class Vehicles previously deemed a total loss or that were purchased with a branded title or where the vehicle was sold "as is" and the purchase price for such vehicle therefore reflects such condition; current and former owners of a Class Vehicle that previously have released their claims against BMW with respect to the issues raised in the Action, etc.

**Extension of Warranty Period.** The major benefit for the Class Members per Settlement Agreement is the extended warranty related to the Eligible Repair[3]. Per Settlement Agreement, the Settlement Class will receive an automatic extension of the warranty period (7 years or 75,000 miles, whichever comes first), during which any Class Vehicle that requires an Eligible Repair will be repaired by a repair facilities and service centers authorized by BMW NA free of charge.

**Reimbursement for Out-of-Pocket Costs Incurred Before the Class Notice Date.** Upon submission of a timely claim form and required documentation, after final approval (once the Settlement becomes effective), BMW NA will reimburse Class Members for money paid for the Eligible Repair, and reasonable labor costs for this repair, that were incurred prior to the Class Notice, provided such amounts were not otherwise previously reimbursed by insurance, warranty or goodwill ("Out-of-Pocket Costs"). As such, the Class Members who have incurred out-of-pocket costs prior to the Mailing Date of the Class Notice on such Eligible Repairs may receive reimbursement after submitting a valid and timely Claim Form before August 1, 2023,

---

[3] "Eligible Repair" means a repair performed by a BMW center in the United States on a Class Vehicle during the Extended Warranty Period to address or remedy a customer complaint of an SRS warning light illumination and/or damage to other components (if any) below the cupholder that the BMW center determines or determined was caused by liquid that spilled or that otherwise seeped through the cupholder(s) on the front center console of a Class Vehicle.

Case No. 21-cv-02063-CJC (JDEx)
PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

the claims submission deadline. (Brightk Consulting, Inc. v. BMW of North America, LLC, www.warninglightsspillsettlement.com, accessed July 31, 2023.)

**A Consumer-Friendly Claims Process.** The Claims process under the Settlement is easy and straightforward. The Warranty Extension benefit requires no claim or out-of-pocket payment. For previously incurred Out-of-Pocket costs, Class Members were required to complete and submit a simple claim form to the Claims Administrator, along with basic documentary proof necessary to establish the claimed out-of-pocket expenses. The Settlement provides for prompt reimbursement for eligible out-of-pocket costs once the Settlement becomes effective. Claims Administrator established and administered a toll-free telephone number dedicated to the Settlement which provides recorded information about the Settlement. Claims Administrator also established a website dedicated to the Settlement which provides information about the Settlement and all relevant documents, including the Claim Form available for download, an email address for Class Members to ask the Claims Administrator questions. It further provides an online claims submission portal and instructions on how Settlement Class Members may submit their claims by U.S. Mail or via an online submission portal.

**Attorney's Fees and Service Awards.** BMW NA will pay Class Counsel's reasonable attorneys' fees and expense reimbursements in an amount consistent with the terms of the Settlement Agreement and as approved by the Court. Under the Settlement Agreement, BMW agreed not to oppose Plaintiff's request for attorney's fees and expenses of up to a combined sum of $375,000 to Plaintiff's counsel, which will be paid separate and apart from the benefits to the Class. Payment of attorney's fees and expense reimbursement will not impact or diminish any of the Settlement benefits available to the Class.

**Settlement Class Representative Service Payment.** "Settlement Class Representative Service Payment" means the reasonable service payments approved by the Court for the Settlement Class Representative's incentive payment not to exceed

1  three thousand dollars ($3,000.00).

2  **III.    STATEMENT OF FACTS**

3       **A.    Overview of the Litigation**

4       This matter concerns the issue of defective front console cupholders installed in

5  the Class Vehicles. Plaintiff alleges the front console cupholders in Class Vehicles are

6  defective because liquid that is spilled into them may leak or seep through the

7  cupholders and, if the moisture reaches components below the console, the SRS

8  warning light may illuminate on the dashboard and/or other components below the

9  cupholder may be damaged, which require a dealer repair. [Dkt. 1, ¶ 3]. Consequently,

10  Plaintiff initiated this class action on December 16, 2021, contending that SRS

11  illumination repair costs necessitated by liquid that seeps through the front console

12  cupholders should be borne by BMW NA. (Id.) Prior to this suit, BMW NA's warranty

13  did not cover costs for an Eligible Repair because this damage was caused by an

14  "outside influence." Plaintiff contends BMW NA was aware of this defect in the

15  cupholders and did not disclose it at the time of purchase to consumers. (Id. ¶ 7.) Thus,

16  Plaintiff's Complaint alleges that BMW NA committed fraud and deceit, breached

17  express and implied warranties pursuant to the Song-Beverly Consumer Warranty Act

18  (Civil Code § 1790, et seq.) and the Magnuson-Moss Warranty Act (15 U.S.C. § 2301,

19  et seq.), violated the California Consumer Legal Remedies Act ("CLRA") (Civil Code

20  § 1750, et seq.), California Unfair Competition Law ("UCL") (Business and

21  Professions Code § 17200, et seq.)  and False Advertisement Law ("FAL") (Business

22  and Professions Code § 17500, et seq.). [Dkt. 1, pp. 22-45].

23       Shortly after Plaintiff filed the instant action, the Parties agreed to participate in

24  an early mediation, to discuss the facts and law relating to the matters in the present

25  action and determine if an equitable class resolution can be achieved without further

26  litigation. (Declaration of Hovanes Margarian ("Margarian Decl.") ¶ 6.) Thus, on

27  March 28, 2022, the Parties requested to Court to enter an Order to stay the instant

28  action pending the anticipated May 9, 2022, mediation in this matter.

Case No. 21-cv-02063-CJC (JDEx)

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

1   On May 9, 2022, the Parties participated in a full-day in-person mediation with
2   Jed D. Melnick of JAMS in New York. Id. The Parties discussed their respective
3   positions and exchanged numerous settlement proposals with Mr. Melnick's help
4   during this seven (7) hour mediation session. Margarian Decl. Id. The case did not settle
5   on May 9, 2022, but the Parties made significant progress on a potential class
6   resolution. Margarian Decl. Id.

7   The Parties continued their settlement dialogue through Mr. Melnick after May
8   9, 2022.  Id.  Among other things, the Parties discussed relevant facts, continued to
9   exchange settlement proposals and counter proposals, and BMW NA provided informal
10  discovery that allowed Class Counsel to conduct a thorough examination and
11  investigation related to the subject matter of the instant case. Margarian Decl. ¶ 4.
12  Because their settlement dialogue was ongoing, on July 5, 2022, the Parties requested
13  that this Court extend the stay in this action by an additional sixty (60) days while the
14  Parties continued their settlement negotiations.

15  On July 12, 2022, the Parties participated in a second mediation with Mr.
16  Melnick, and after a half-day mediation agreed to the terms of a proposed class action
17  settlement. Margarian Decl. ¶ 6.  The Parties signed a Memorandum of Understanding
18  on July 28, 2022. Margarian Decl. ¶ 8.

19  On September 6, 2022, per the Parties' request the Court ordered the instant
20  action to stay in by an additional thirty (30) days up until and including September 30,
21  2022, in order the Parties to finalize their settlement documents and prepare to file a
22  motion for preliminary approval of the settlement.

23  Once the settlement terms were finalized between the Parties, Plaintiff filed the
24  Notice of Motion and Motion for Preliminary Approval of Class Settlement and
25  Direction of Notice Under Fed. R. Civ. P. 23(e). Plaintiff filed the First Amended Class
26  Action Complaint for Damages ("FAC") with the comprehensive class definition to
27  address the definition inconsistency noted by the Court. (See Dkt. 29, p. 2; Dkt. 30)
28  After filing the FAC, Plaintiff re-filed the Notice of Motion and Motion for Preliminary

Case No. 21-cv-02063-CJC (JDEx)
PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

Approval of Class Settlement and Direction of Notice Under Fed. R. Civ. P. 23(e) ("Motion for Preliminary Approval"). (Dkt. 31) The Court issued an order requiring a supplemental briefing regarding the Motion for Preliminary Approval (Dkt. 33). Plaintiff filed its response to the latter (Dkt. 34), and the Court granted Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Conditional Certification of Settlement Class. (Dkt. 35)

On February 2, 2023, Plaintiff filed Notice of Motion and Motion for Attorney's Fees, Costs, Expenses, and Incentive Award ("Motion for Attorney's Fees"). (Dkt. 38)

In order to obtain complete data regarding the Class Members' claims, the Parties twice stipulated for the extension of the deadline to file the Motion for Final Approval of the Class Action Settlement. (Dkt. 39; Dkt. 41) In response to the Parties' stipulations, the Court extended the deadline for filing the present motion until August 21, 2023, and the final approval hearing was set on September 11, 2023. (Dkt. 40; Dkt. 42)

### B.    Plaintiff's Investigation and Discovery

Plaintiff by and through Class Counsel zealously litigated this action by conducting thorough investigations of the facts and circumstances of the underlying allegations of this action; engaging in discovery of the claims; evaluated and considered the applicable law. Plaintiff and its Counsel, among other things, consulted and retained automotive experts and conducted vehicle inspections; researched publicly available materials and information provided by the National Highway Traffic Safety Administration ("NHTSA") concerning consumer complaints about the front console cupholder issues; reviewed and researched consumer complaints and discussions related to the front console cupholder and liquid leakage in articles and online forums; reviewed various manuals and technical service bulletins discussing the alleged defect; conducted research into the various causes of actions; etc. See, e.g., Margarian Decl. ¶ 3. Further, the Class Counsel propounded and analyzed confirmatory discovery. It was not until Class Counsel gathered, reviewed, and assessed sufficient information,

Case No. 21-cv-02063-CJC (JDEx)

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

through vigorous investigation and discovery, before the Parties entered a reasoned and well-informed Settlement. See, e.g., *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("significant investigation, discovery and research" provides parties with sufficient information to make informed settlement decisions); *Byrne v. Santa Barbara Hosp. Serv., Inc.*, 2017 WL 5035366, at *8 (C.D. Cal. Oct. 30, 2017) ("[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement") (citation omitted).

### C. The Parties Protected Arm's Length Settlement Negotiations

The proposed Settlement was the culmination of protracted discussions between the Parties, extensive consultation with their experts, discovery, and thorough analysis of the pertinent facts and law at issue. The proposed Settlement is a result of well-informed and non-collusive, arm's-length negotiations, among other things, assisted by a neutral, experienced mediator. Throughout the negotiations resulting Settlement Agreement, both Parties were represented by experienced class action counsel.

Besides numerous extensive informal negotiations, the Parties held two formal mediations. The Parties mediated before Jed D. Melnick, Esq., JAMS Mediator on May 9, 2022, in New York. Following the months-long settlement discussions the Parties could not reach a resolution. After conducting confirmatory discovery and further research and fact gathering, the Parties re-engaged with the mediator to discuss the outstanding settlement terms. The second mediation session was held on July 12, 2022, before Mr. Melnick. During the second mediation, which lasted half a day, the Parties reached agreement regarding the terms of the proposed class action settlement. Mr. Melnick helped to manage the Parties' expectations by offering valuable, impartial analysis of the issues, risks, and benefits to both sides. "[C]ourts have also found collusion less likely when settlement negotiations are conducted by a third-party mediator. [T]hese considerations likely support that the settlement was negotiated at arm's length and not a product of collusion." *Victorino v. FCA United States Ltd. Liab. Co.*, No. 16cv1617-GPC(JLB), 2023 U.S. Dist. LEXIS 79386, at *15 (S.D. Cal. May

5, 2023)

Throughout the arms-length mediation sessions, the Parties diligently worked to achieve a just resolution. Before each of the mediations commenced, both Parties presented their respective positions in mediation briefs. During the mediation process, they successfully reached an agreement on all significant aspects of the proposed relief for the Class, pending BMW NA's corporate approval. It was only after arriving at the Settlement Agreement that they proceeded to negotiate attorney's fees, costs, and expenses, and incentive award, which were ultimately settled as well.

Following the mediation sessions, among other steps taken, the Parties formalized the Settlement Agreement, which included the drafting and finalization of the Class Notice and Claim Form. The final outcome of the extensive negotiations between the Parties is a comprehensive and equitable Settlement Agreement that renders further litigation unnecessary and offers substantial benefits to members of the putative class.

**Clear Sailing Provision.** In contrast to the common-fund settlements, where defendants seek to reduce the overall fund amount without specific fund allocation concerns between the class and their counsel, Defendant in this case was particularly focused on negotiating the lowest amount of attorney's fees, costs, and expenses it would have to compensate. The settlement terms regarding the Class relief had already been reached when the Parties started the negotiations regarding the Class Counsel's fees, costs, and expenses. Thus, considering that BMW NA had already committed to providing certain relief to Class Members, the Class Counsel's fees would only further increase BMW NA's overall expenditure.

"[T]he very existence of a clear sailing provision increases the likelihood that class counsel will [] have bargained away something of value to the class." *Victorino v. FCA United States LLC*, 2023 U.S. Dist. LEXIS 79386, *24-25 (quoting *In re Bluetooth*, 654 F.3d at 948 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991))). "Courts consistently have found that clear sailing provisions

Case No. 21-cv-02063-CJC (JDEx)

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

do not signal collusion where the attorneys' fees award does not involve a common fund apportioned between relief for the class and attorneys' fees. See, e.g., *Roberts v. Electrolux Home Prods., Inc.,* No. SACV12-1644-CAS(VBKx), 2014 U.S. Dist. LEXIS 130163, 2014 WL 4568632, at *14 (C.D. Cal. Sept. 11, 2014) ("[T]he Court notes that this Settlement does not involve a common fund apportioned between relief and fees—and the attorneys' fee award will not reduce any benefits received by the Class. Thus, any objection regarding a so-called 'clear-sailing' provision is also overruled.") (citations omitted); *Eisen v. Porsche Cars N. Am., Inc*., No. 2:11-cv-09405-CAS-FFMx, 2014 U.S. Dist. LEXIS 14301, 2014 WL 4390006, at *10 (C.D. Cal. Jan. 30, 2014) ("The Settlement Agreement merely provides that [defendant] will not object to a fee petition by plaintiffs' counsel so long as the requested fees and costs do not exceed $950,000. This type of provision is appropriate when, as here, it does not impact the substantive benefits offered to the class."); *Calloway v. Cash Am. Net of Cal. LLC*, No. 09-CV-04858 RS, 2011 U.S. Dist. LEXIS 41098, 2011 WL 1467356, at *2 (N.D. Cal. Apr. 12, 2011) (noting that where no common fund exists, no adversarial relationship exists between class counsel and the class concerning fees). So it is here. Thus, the clear sailing provision, []though a [] warning sign, does not signal collusion under the circumstances presented here." *Schuchardt v. Law Office of Rory W. Clark*, 2016 U.S. Dist. LEXIS 6741.

BMW NA refused to allow the attorney's fees, costs, and expenses of the Class Counsel to be determined by the Court at a later time. Defendant insisted on negotiating the fee award and capping at the amount of $375,000.00 instead of leaving the fee dispute open to determination at the end of the Class representation. This demand became an ultimatum for the overall settlement. If the Class Counsel refused to accept the demand, the relief for the Class would have been jeopardized.

Class Counsel worked vigorously to defend the rights of the Class Members and achieve the beneficial and just recovery for the Class. The proposed Settlement Agreement secures a fair and adequate relief for the Class Members, the overall value

of which is forecasted to amount to 2.42-4.72 million. (Margarian Decl., ¶ 22) Had the attorney's fees, costs, and expenses been assessed as a percentage of the Class recovery, the amount of fees would have been much higher than the limited amount per Settlement Agreement. However, risking the highly advantageous relief proposed for the Class in Settlement Agreement merely for the sake of the attorney's fees would have been unethical and unjust towards hundreds of thousands of Class Members, who stand to benefit.

The clear sailing concern raised by the Court would be a potential indicative of collusion if the attorney's fees, costs, and expenses were being paid out from a general fund for the Class Members. In such a scenario, the higher the attorney's award, the lower is the Class recovery. Here, however, the fees have no correlation to the amount of the benefit being conferred upon the Class. The Settlement Agreement was structured to prevent attorney's fees, costs, and expenses from diminishing the benefits awarded to Class Members under the settlement, as Class Counsel's fees, costs, and expenses will be paid separately and independently from any relief provided to the Settlement Class. Thus, the clear sailing provision has no negative effect on the Class. The clear sailing provision here is an unavoidable product of Defendant's desire to impose a limit on its liability for payment of Class Counsel's fees and costs.

**Reverter.** In its Order the Court expressed concerns regarding the functional equivalent of a reverter contained in the Settlement Agreement. (Dkt. 35, p. 16) In another case, which, too, had a claims-made settlement, containing a functional equivalent of the reverter clause, this Court concluded that "Settlement Agreement, however, does not give rise to collusion concerns. See *Shames v. Hertz Corp.*, 2012 WL 5392159, at *14 (S.D. Cal. Nov. 5, 2012) ("[B]ecause the attorneys' fees in this case are wholly separate from the class settlement—and will have no impact one way or the other on the amount the class recovers—a 'savings' for Defendants does not implicate the concerns the Ninth Circuit expressed about the 'kicker' provision in the Bluetooth settlement.")." *Bowdle v. King's Seafood Co., LLC*, 2022 U.S. Dist. LEXIS

Case No. 21-cv-02063-CJC (JDEx)
PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

240383, *25. The Court explained that "many of the class members [] likely suffered no financial injury at all, but rather only the risk of future financial injury. See *Hashemi*, 2022 WL 18278431, at *7 (making same observation in data breach case). And the Settlement Agreement already provides for those that did suffer financial injury to get reimbursed for their time and their losses. Distributing unawarded fees to class members "would result in many Class Members receiving a windfall for injuries they never suffered—and thus lack standing to prosecute." Id." Id.

In this matter, the settlement value, in larger part, relates to the future benefits that the Class Members will receive in the form of the warranty extension. Moreover, the Class Members who have incurred out-of-pocket costs on Eligible Repairs prior to the date of the Class Notice, could submit a claim form to receive reimbursement for such costs.

As such, there is no windfall to Defendant because the fees that may hypothetically not be awarded to Class Counsel are sums which belong to Defendant and the Class has no rights to any of it. The Parties cannot collude to harm themselves. Class Counsel by definition cannot collude to harm itself. Class Counsel, not Class Members, will be harmed if the fees and costs are not awarded in full. To prevent such harm, the Court holds the power to approve the fees and costs.

**The Settlement Value and Attorney's Fees, Costs, and Expenses.** The Court noted that "for claims-made settlements, the lodestar method is often appropriate; however, courts often conduct a cross-check on the reasonableness of the attorneys' fee award using the percentage-of-recovery method." (Dkt. 35, p. 17). In order to assess, if the Class Counsel's fee award is reasonably proportionate to the Settlement value, three figures are to be considered: (1) the value of the Settlement; (2) the amount of attorney's fees, costs, and expenses; and (3) the benchmark determining the reasonableness.

*(1)The value of the Settlement.*

Under the Settlement Agreement the Class receives two benefits: (1) automatic warranty extension that would cover Eligible Repairs; and (2) the reimbursement of

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

1  out-of-pocket expenses previously incurred by Class Members on such repairs. The
2  total amount of reimbursement for out-of-pocket expenses claimed by the Class
3  Members amounts to $223,655.70. (Kroll Decl., ¶ 12) Moreover, the retained expert,
4  actuary Lee M. Brown, estimated the economic value of the extended warranty under
5  the Settlement Agreement to be between $2.2 million to $4.5 million. (See Declaration
6  of Lee M. Bowron, ("Bowron Decl.", Exhibit II.) As such, the total value of the Class
7  Settlement is between $2.42 million to $4.72 million.

8       (2) The amount of attorney's fees, costs, and expenses.

9       The total amount of Class Counsel's fees, costs, and expenses pursuant to the
10  Settlement Agreement and the Motion for Attorney's Fees is $375,000.00.

11       As of the date of the Motion for Attorney's Fees, Costs, and Expenses, Class
12  Counsel's costs and expenses amounted to $30,122.60. Retaining Mr. Bowron, Class
13  Counsel has expended an additional $12,500.00. Thus, the total costs and expenses
14  amount to $42,622.60. These costs and expenses are minimal and reasonable in light of
15  the settlement benefits.

16       Deducting the $42,622.60 from the $375,000.00 sum, results in a sum of
17  $332,277.40 for attorney's fees, including Class Counsel's assistant's fees amounting
18  to $9,945.00, calculated at the reduced rate of $150.00 per hour.

19       As of the date of the Motion for Attorney's Fees, Costs and Expenses, a total of
20  billable hours on this matter was estimated at 424.70 (excluding the hours expended by
21  Class Counsel's assistant). Since that time, eighteen (18) additional unanticipated hours
22  of work have been conducted by Class Counsel. Therefore, the total hours amount to
23  442.70. Dividing the sum of $322,432.40 by 442.70 results in an effective rate of
24  $728.33 per hour.

25       Compared to Class Counsel's requested rate of $775.00 per hour within the
26  Motion for Attorney's Fees, Costs and Expenses, with the adjusted costs and hours, the
27  effective (new requested) rate of $728.33 is a negative multiplier of 6.02%.

28       Moreover, compared to Class Counsel's usual and customary rate on individual

Case No. 21-cv-02063-CJC (JDEx)
PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

lemon law cases of $650, the effective (new requested) rate of $728.33 results in a request of a mere 1.1205 multiplier (a 12.05 % increase due to the risks and large class-wide benefit).

(3) *Accepted benchmark.*

As has been indicated in the Order, "in making the percentage of recovery calculation, the Ninth Circuit has held that 25% of the common fund is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure from this benchmark. *Bluetooth, 654 F.3d at 942–43; see also Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989)*" (Dkt. 35, p. 18) Accordingly, based on the total value of the Class Settlement being between $2.42 million to $4.72 million, the attorney's fees, including Class Counsel's assistant's fees, in the amount of $332,277.40 amount to 13.73% to 7.04% of the Settlement value. Respectively, the requested fees, costs, and expenses of $375,000.00, amount to 15.50% to 7.94% of the Settlement Value. If we take the average of the possible recovery range, the percentage comparison of the fees, costs and expenses compared to the Class Settlement amounts to 11.72%. These numbers are well below the 25% benchmark, and thus, are very reasonable. With the attorney's fees set at 25% of the estimated settlement value, the amount would have ranged from $600,000.00 to $1,180,000.00, while still being viewed as reasonable.

**D. Class Counsel's Ongoing Efforts to Enforce the Settlement Terms**

Following this Court's Order and dissemination of the Class Notice, Class Counsel received calls and emails from Class Members inquiring as to how they can participate in the class action settlement. Margarian Decl. ¶ 18. The Class Members also had questions as to the scope of benefits. Id. Class Counsel answered Class Members' questions, including following up when needed.

Moreover, Class Counsel called around fifty (50) BMW NA dealerships – across different states – to confirm that Defendants have advised them of the Class Action Settlement and that they are aware of their obligations under that Settlement. Margarian

Decl. ¶ 19. Class Counsel personally spoke to either the Service Manager or the Service Advisor at numerous Service Centers to ensure that the dealerships understand the terms and conditions of the Settlement. Id. ¶ 19.

Additionally, to accurately respond to the Court's concerns related to the Settlement value addressed in the Order, Class Counsel researched and found a qualified expert - actuary with extensive experience ("Retained Expert"), to calculate the value of the benefits that the warranty extension will provide. Following the communications with the Retained Expert, Class Counsel sent multiple inquiries to the Counsel of BMW NA regarding the requested data of the Retained Expert. Moreover, Class Counsel conducted phone and email communications with the Retained Expert, providing him with the facts and data as required. Margarian Decl. ¶ 20.

Class Counsel has drafted two stipulations to extend the deadline of this Motion, as well as continue the Final Approval hearing, in order to receive the Claims data from the Claims Administrator.

As such, after filing the Motion for Attorney's Fees, Class Counsel continued working diligently to secure the final approval of the Settlement, for which he expended additional eighteen hours (18), and $12,500 expenses.

## IV.    ARGUMENTS

### A.    The Court Should Certify the Class

#### 1.  Rule 23(a)'s Requirements Are Satisfied

**Numerosity**. If the class is sufficiently large that the joinder of all members is impractical or that individual joinder is impractical, the numerosity requirement is met. See *Cox v. American Cast Iron Pipe*, 784 F.2d 1546, 1557 (11th Cir. 1986). The class contains approximately 295,817 members. Margarian Decl. ¶ 28 Joinder of individual claims is impractical here and the numerosity requirement is readily satisfied. Fed. R. Civ. P. 23(a)(1). Moreover, the Court, in its Order, cited *Moore v. Ulta Salon,* which says that "as a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311

Case No. 21-cv-02063-CJC (JDEx)

F.R.D. 590, 602– 03 (C.D. Cal. 2015); see *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 473–74 (C.D. Cal. 2012). (Dkt. 35, p. 6)

**Commonality.** To satisfy the commonality requirement, class members' claims must "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As such, the class members should have suffered from the same injury, not from the violation of the same law. Id. The issue of the settlement of all claims is whether the front console cupholders in the Class Vehicles are defective. The second factor is whether BMW NA was aware of the defect present in the Class Vehicles, which is common for all Class Vehicles. Thus, the matter can be addressed collectively for the whole class. Accordingly, the commonality requirement here is satisfied, which has also been confirmed by the Court in its Order. (Dkt. 35, p. 7)

**Typicality.** Plaintiff's claims are typical of the proposed Class because they all are caused by the purchase or lease of the Class Vehicles with the alleged defect. The claims are typical, because they are "reasonably coextensive with those of the absent class members" See *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998); *Forcellati v. Hyland's, Inc*., 2014 U.S. Dist. LEXIS 50600, at *31 (C.D. Cal. Apr. 9, 2014). Plaintiff here alleges that she acquired a Class Vehicle, which was equipped with a defective cupholder. As such, she experienced the same injury as other Class Members. See *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). Plaintiff's allegations are "reasonably coextensive" with the claims of the Class. As such, the typicality requirement is satisfied. (Dkt. 35, p. 7)

**Adequacy.** The adequacy requirement demands that the class representative fairly and adequately protects the interest of the class. As such, there should be no conflict of interest between the proposed class and the proposed class representative, and the class should be represented by a competent counsel who will zealously

prosecute the action on behalf of the class. Plaintiff is also an adequate class representative because (1) there are no antagonistic or conflicting interests between Plaintiff and his counsel and the absent Class Members; and (2) Plaintiff and his counsel will vigorously litigate the action on behalf of the Class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp*, 150 F.3d, 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015). Plaintiff has no conflicts of interest with other Class Members. Plaintiff as a member of the Class experienced the same injuries, has identical claims with other members of the Class, and seeks, like other Class Members, compensation. As such, Plaintiff's and the Class Counsel's interests align with those of the Class. Plaintiff and the Class Counsel have and continue to vigorously prosecute this case on behalf of the Class. Further, Class Counsel has more than 16 years of experience in automotive defect actions and is experienced in class actions, which makes Class Counsel capable and well suited to prosecute on behalf of the Class. See Margarian Decl., ¶ 30. Thus, Plaintiff will adequately protect the interests of the Class.

### 2. Rule 23(b)(3)'s Requirements Are Satisfied

In addition to fulfilling the four prongs set forth by Rule 23(a), Plaintiff must show that at least one of the three requirements of Rule 23(b) is met. Plaintiff seeks class certification under Rule 23(b)(3), which allows class certification if (1) questions of law or fact common to the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods. Fed. R. Civ. P. 23(b)(3) These are commonly referred to as the predominance and superiority requirements.

**Predominance.** The main question under the predominance requirement is "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). "[A] plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are

subject only to individualized proof.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) (citation omitted). As such, to satisfy the predominance requirement, Plaintiff has to prove that common questions of law and fact predominate over individualized questions. "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 10206 (9th Cir. 1998). "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 442.

Here, Plaintiff contends that the key issues of this case are typical for all Class Members, can be proved by common evidence and can be solved for all Class Members in a single adjudication. The claims that the Class Vehicles are equipped with defective cupholders, and that BMW NA was aware about the common defect and concealed it, thus causing economic damages to Plaintiff and other Class Members, establish a common issue that connects all Class Members. ("Courts in the Ninth Circuit find predominance where there is a sufficient constellation of common issues that binds class members together." *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 545 (C.D. Cal. 2012)) The underlying question of this action can be resolved using the same evidence for all Class Members, and thus is the type of predominant question that justifies a settlement for the Class. See, e.g., *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016) (When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.")

Moreover, the Court agreed that "these constitute questions common to all the Class Members and can be resolved for all members in a single adjudication.

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

1    Accordingly, the Court finds that the putative class is "sufficiently cohesive [], and that

2    common questions of law and fact predominate." (Dkt. 35., p. 9)

3         The common issues of law and fact predominate in this action, and thus, the

4    predominance requirement of Rule 23(b)(3) is satisfied.

5         **Superiority.** Rule 23(b)(3) further requires determining whether "a class action

6    is superior to other available methods for fairly and efficiently adjudicating the

7    controversy." Fed. R. Civ. P. 23(b)(3). "The rule sets forth four specific (though non-

8    exclusive) considerations pertinent to these findings: (A) the class members' interests

9    in individually controlling the prosecution or defense of separate actions; (B) the extent

10   and nature of any litigation concerning the controversy already begun by or against

11   class members; (C) the desirability or undesirability of concentrating the litigation of

12   the claims in the particular forum; and (D) the likely difficulties in managing a class

13   action." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1260.

14        In this case, the class treatment of the Plaintiff's and the Class's claims is deemed

15   more superior than individual actions, as a class action would provide higher efficiency,

16   while also saving cost, time, and effort. Initiating hundreds of thousands of individual

17   actions for the same issue would not only be inefficient, but also unrealistic.

18   Additionally, the relatively small amount of damages would not justify the resources

19   invested in each separate action. ("the Court finds that a class action is a superior

20   method of adjudication in this case. First, the number of class members here—in the

21   hundreds or thousands—is too large for the prosecution of separate actions by each

22   class member to be likely, practical, or desirable." *Carriuolo v. GM Co.*, 823 F.3d 977;

23   *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 541 (S.D. Fla. 2015)) Moreover,

24   if each Class Member filed an individual case, the injuries, claims and the evidence

25   would be substantially identical. Yet there would be a risk of having different outcomes,

26   out of the same conduct. Manageability concerns are further reduced because all current

27   owners and lessees will benefit automatically from the warranty extension without

28   having to submit an individual claim. Class Members were notified about the claim

submission process, based on which qualified claims can recover the out-of-pocket costs incurred for the Eligible Repairs.

"Because common questions of law and fact predominate, class-wide adjudication appropriately conserves judicial resources and advances society's interests in judicial efficiency." *Carriuolo v. GM Co.*, 823 F.3d 977 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982)). All these considerations demonstrate the superiority of a class action here.

Accordingly, the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied. (*See also* Dkt. 35, p. 10.)

## B.    The Court Should Finally Approve the Settlement

A court may approve the parties' settlement only after it determines that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). According to the Rule 23(e)(2) a district court should approve a proposed settlement after considering several factors, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of the proposed award of attorney's fees, including timing of payment, and (iv) any other agreement made in connection with the Settlement; and (D) the proposal treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)

In the Ninth Circuit, a court must consider the following factors when determining the fairness, adequacy, and reasonableness of a proposed settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed

settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993), quoting *Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982), *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

### 1. Fed. R. Civ. P. 23(e)(2)(A) the class representatives and class counsel have adequately represented the class

The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class" and will vigorously represent the class. See *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006). The adequacy factor seeks to ensure that there are no conflicts of interest between the class representative(s) and the class members that they represent. ("The adequacy inquiry under Fed. R. Civ. P. 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury' as the class members. *Amchem Prods. v. Win dsor*, 521 U.S. 591, 597) Here, Class Representative shares identical claims and interests with the Class.

Further considerations for the assessment of this factor include the nature, scope and outcome of the discovery, which "may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) Committee Notes on Rules—2018 Amendment. Plaintiff by and through Class Counsel engage in thorough discovery and investigations, including among other things consulting and retaining automotive industry experts and conducting vehicle inspections; researching publicly available materials and information provided by the NHTSA concerning consumer complaints about the Class Vehicle's defect; reviewed and researched consumer complaints and discussions related to the front console cupholder and liquid leakage issue; reviewed various manuals and technical service bulletins discussing the alleged defect; conducted research into the various causes of actions; etc. See, e.g., Margarian Decl. ¶¶ 2-3. Class Counsel also propounded and

Case No. 21-cv-02063-CJC (JDEx)

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

reviewed the confirmatory discovery. As such, Class Counsel gathered substantive evidence and sufficient information, which combined with his extensive experience in litigating automotive cases including class actions, allowed him to achieve a favorable Settlement for the Class.

### 2. Fed. R. Civ. P. 23(e)(2)(B) the proposal was negotiated at arm's length.

See Section III, Paragraph C, "The Parties Protected Arm's Length Settlement Negotiations" on page 12 of this motion. The Parties conducted two (2) days of mediation and extensive discussions about the substantive benefits for the class before any discussion of attorney's fees and costs as evidenced by the mediator's declaration. (Declaration of Jed D. Melnick in Support of Plaintiff BrightK Consulting Inc.'s Notice of Motion and Motion for Preliminary Approval of Class Settlement and Direction of Notice Under Fed. R. Civ. P. 23(e), ¶¶ 5-10)

### 3. Fed. R. Civ. P. 23(e)(2)(C) the relief provided for the class is adequate, taking into account.

(i)    the costs, risks, and delay of trial and appeal

Under Rule 23(e)(2)(C)(i), courts in the "Ninth Circuit evaluate 'the strength of the plaintiffs' case; … complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial.'" *Extreme Networks*, 2019 WL 3290770, at *8 (quoting *Hanlon*, 150 F.3d at 1026). While having strong claims based on strong merits against BMW NA, Plaintiff realized the substantial risks of the litigation. It was also ambiguous whether a better settlement outcome could have been achieved had the case been litigated further until the trial. Consequently, the inherent risk of bringing such a complex case before a jury trial and the "risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" strongly favors approval. *In re Ominivision Tech., Inc*., 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) "The benefits Class Members will receive present a fair compromise given the costs, risks, and delay of trial and appeal. Proceeding in this

1    litigation in the absence of settlement poses risks to Plaintiff, such as failing to certify

2    a class, having summary judgment granted against it, or losing at trial." (Dkt. 35, p. 14)

3         (ii)  the effectiveness of any proposed method of
          distributing relief to the class, including the method
4              of processing class-member claims

5       Pursuant to the Settlement Agreement the Class Members will receive the

6    automatic warranty extension as well as the reimbursement of out-of-pocket expenses

7    incurred on Eligible Repair. The Court concluded that the "procedure for filing claims

8    is not unduly demanding." (Dkt. 35, p. 15)

9         (iii)  the terms of the proposed award of attorney's fees,
          including timing of payment

10
11      "In considering the proposed award of attorneys' fees, the Court must scrutinize

     the Settlement Agreement for three factors that tend to show collusion: (1) when
12
     counsel receives a disproportionate distribution of the settlement, (2) when the parties
13
     negotiate a "clear sailing arrangement," under which the defendant agrees not to
14
     challenge a request for agreed-upon attorney fees, and (3) when the agreement contains
15
     a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than
16
     the class. *Briseno v. ConAgra Foods, Inc.*, 998 F.3d 1014, 1022 (9th Cir. 2021)." (Dkt.
17
     35, p. 15)
18
        "For claims-made settlements, the lodestar method is often appropriate; however,
19
     courts often conduct a cross-check on the reasonableness of the attorneys' fee award
20
     using the percentage-of-recovery method. See *Ronald Chintz et al. v. Intero Real Estate*
21
     *Services*, 2022 WL 16528137, at *6 (N.D. Cal. Oct. 28, 2022); *Online DVD-Rental*,
22
     779 F.3d at 949 ("One way that a court may demonstrate that its use of a particular
23
     method or the amount awarded is reasonable is by conducting a cross-check using the
24
     other method.")." (Dkt. 35, p. 17)
25
        It was only after reaching the Settlement regarding the Class Member's relief
26
     when Parties started the negotiations regarding the attorney's fees, costs, and incentive
27
     award. Even though the Class Counsel achieved an exceptional outcome for the Class,
28

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

BMW NA refused to allow the attorney's fees and costs of the Class Counsel to be determined by the Court at a later time. Defendant insisted on negotiating the fee award and capping at the amount of $375,000.00 instead of leaving the fee dispute open to determination. The limitation imposed on the potential award for Class Counsel's fees, costs and expenses became an ultimatum for the overall settlement. Had Class Counsel refused to accept the demand, the Class relief would have been risked.

The issues raised by the Court regarding disproportionate distribution of the settlement; clear sailing arrangement; and functional equivalent of the reverter clause are addressed under the Section III, Paragraph C, "The Parties Protected Arm's Length Settlement Negotiations" on pages 13-18 of this Motion.

Moreover, Class Counsel presented the detailed breakdown of the hours billed by him throughout the one and a half years of litigating this action. (See Dkt. 38-1, Exhibit B) Further, the Class Counsel presents the fees and expenses incurred by him after the filing of the Motion for Attorney's Fees, which have not been included in the latter. See Margarian Decl., ¶¶ 18-20, 26, 29.

Upon the Court's final approval of the class action settlement, there is a thirty-day deadline for the Class Members to file an appeal. This is why settlements must have a thirty-day window of time before any payment can be processed. Upon expiration of the thirty (30) days, it is easy for Defendant to issue the payment for attorney's fees, costs, and expenses. Since payments made to the Class Members are anticipated to be in the hundreds or thousands, Defendant cannot commit to making that many payments in one day (on the thirtieth (30th) day once the appeal period has expired). Therefore, Defendant proposed, and Plaintiff agreed to a sixty-day window of time for the Class payments.

Since there have been no objections to the Settlement, there can be no appeal filing in this case. As such, there is no need to wait thirty (30) days. Accordingly, all payments to Class Members can commence as soon as the final approval order is issued by the Court. The Parties anticipate that the Class Administrator will be able to

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT

physically process those payments to the Class within a week of the final approval.

> (iv)    any other agreement made in connection with the Settlement;

The Parties confirm that to this date there are no identifiable agreements in accordance with Rule 23(e)(3).

### 4. Fed. R. Civ. P. 23(e)(2)(D) the proposal treats Class Members equitably relative to each other

Even though all Class Members receive automatic warranty extension which would benefit them in the future, those Class Members who had already incurred out-of-pocket expenses for Eligible Repairs will be compensated depending on the amount of those expenses and supporting documentation. This difference in treatment the Court found to be reasonable and concluded that the Settlement Agreement treats Class Members equitably. (Dkt. 35, p. 20)

### C.    Service Award of $3,000.00 for the Class Representative is Appropriate

Incentive awards are typical in class action to compensate class representatives for work undertaken on behalf of the class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943. Plaintiff seeks an incentive award for the time and effort invested to support the action with a modest personal interest, the Settlement Agreement of which provides considerable benefits to the Class. Class Counsel would not have been able to achieve the results described herein if it were not for the diligence of Class Representative, who took it upon itself to pursue this case on behalf of thousands of Class Members. Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).

After an agreement had been reached as to the Class Members' benefits, BMW NA agreed to pay a service award of up to $3,000.00 to the Class Representative,

Case No. 21-cv-02063-CJC (JDEx)

separate and apart from any other sums agreed to under the settlement and subject to Court approval. SA, ¶ 29-30.

When determining the amount of the service payment Class Counsel compared it with incentive awards in other cases. See, e.g., *Eisen v. Porsche Cars N. Am., Inc.,* No. 2:11-cv-09405-CAS-FFMx, at *19 (C.D. Cal. Jan. 30, 2014) (granting the request for an incentive award in the amount of $3,750); *Faigman v. AT&T Mobility LLC*, No. C06- 04622 MHP, at *8 (N.D. Cal. Feb. 16, 2011) (deeming $5,000 as "presumptively reasonable" incentive award and approving $3,333.33 for each named plaintiff); *Veilleux v. Elec. Me., LLC*, No. 1:16-cv-571-LEW, at *5 (D. Me. Nov. 9, 2020) (approving $5,000 for each named plaintiff); *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (approving $5,000 as an incentive award).

Plaintiff asserts that a $3,000.00 award will compensate it for its work including but not limited to meeting and routinely communicating with Class Counsel regarding this action and underlying issues; remaining fully informed about the case development and assisting with investigation of the facts; reviewing the complaint prior to filing; providing the Subject Vehicle for inspection; and consulting with Class Counsel during the litigation and settlement negotiations. (See Declaration of Fang Lin in Support of Plaintiff's Notice of Motion and Motion for Final Approval of Class Settlement, ¶¶ 7-10.)

The involvement of Plaintiff was crucial to the prosecution of the case. Indeed, without the willingness of involvement and participation of Class Representative in the prosecution of this case, it could not have been filed, much less produced the benefits indicated in the Settlement Agreement. Plaintiff's dedication and efforts have conferred a significant benefit on hundreds of thousands of Class Members. As such, the incentive award of $3,000.00 is reasonable compensation for Plaintiff's effort and input in this action, and it will not diminish or impact the benefits that the Settlement Class will receive in any way.

///

### D.    Notice of Proposed Settlement

Per Fed. R. Civ. P. 23(c)(2)(B) the Court "must direct to class members the best notice that is practicable under the circumstances."

Within ninety days of the preliminary approval by the Court, Kroll Settlement Administration, who is the Claims Administrator emailed the Class Notice to the Class Members whose email address is known to BMW NA through its customer database and sent notice via First Class Mail when an email address was not available. (SA ¶ 16) Claims Administrator also established a Settlement Website, as well as an email address and a toll-free number to provide further information about the settlement. The Court found that the notice plan in this action is adequate and satisfied the requirements of Rule 23(c)(2)(B).

## V.    CONCLUSION

Plaintiff respectfully requests that the Court grant this motion and finally approve the Settlement.

DATED: August 21, 2023_____          THE MARGARIAN LAW FIRM
                                         801 North Brand Boulevard, Suite 210
                                         Glendale, California 91203

                                         By */s/ Hovanes Margarian*
                                         Hovanes Margarian
                                         Attorney for Plaintiff
                                         BRIGHTK CONSULTING INC.

PLAINTIFF BRIGHTK CONSULTING INC.'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT